OPINION
{¶ 1} Richard and Cheryl Asente, plaintiffs-appellants, appeal from a judgment of the Franklin County Court of Common Pleas, in which the court granted summary judgment to John R. Gargano, defendant-appellee, based upon the expiration of the statute of limitations.
 {¶ 2} In December 1997, Regina Moore, a Kentucky resident, contacted appellants about adopting her son, Justin. Appellants had previously adopted Moore's other son, Joseph. Moore and Justin's birth father, Jerry Dorning, were represented by Kentucky attorney Thomas C. Donnelly with respect to the termination of their parental rights in Kentucky. On December 19, 1997, appellants hired appellee to represent them in filing an adoption petition in Trumbull County, Ohio. The matter proceeded in the Kentucky court. On January 27, 1998, Moore and Dorning executed a document purporting to convey their consent to the adoption entitled "voluntary and informed consent to adoption" ("the consent"). The consent stated that it was irrevocable after 20 days of execution. On February 17, 1998, appellants traveled to Kentucky to pick up Justin. Upon arriving at Donnelly's office, they were presented with a "legal risk statement," which had been prepared by Donnelly. The legal risk statement indicated that, anytime prior to the final hearing on the termination of parental rights, Moore and Dorning could revoke their consents. Appellants signed the legal risk statement and then brought Justin to Ohio. Appellee claims he attempted to obtain the necessary documents from Donnelly to initiate adoption proceedings in Ohio but could not because Donnelly did not forward the documents.
 {¶ 3} On March 16, 1998, a petition for voluntary termination of parental rights was filed in Kentucky; however, on March 26, 1998, Moore and Dorning indicated to the court their unwillingness to proceed with the termination of parental rights and attempted to withdraw their consents. On April 8, 1998, appellants hired attorney Susan Garner Eisenman to file the adoption petition in Ohio. Appellee did not bill appellants for any services after April 13, 1998. On April 15, 1998, appellants hired attorney Mitchell Charney to represent them in the Kentucky proceedings. On June 5, 1998, Eisenman filed an adoption petition in Ohio.
 {¶ 4} A flurry of litigation ensued in both Ohio and Kentucky. On July 6, 1998, the Kentucky court issued an order asserting that it had jurisdiction over Justin and any custody issues. On July 8, 1998, the Ohio court dismissed appellants' adoption petition on the basis that the Kentucky court currently had jurisdiction, and appellants appealed. Appellants filed several motions, including one for relief from judgment, in the Ohio trial court and subsequently voluntarily dismissed the appeal on October 19, 1998. On December 14, 1998, the Ohio court granted appellants' request for relief from the July 8, 1998 order.
 {¶ 5} In the Kentucky proceedings, appellants requested that the court reconsider its order of July 6, 1998. On September 8, 1998, the Kentucky court ruled that appellants were not a proper party.
 {¶ 6} On August 17, 1998, prior to the Kentucky court formally dismissing the birth parents' petition for voluntary termination, the birth parents filed a second action in the Kentucky court seeking the immediate custody of Justin, which appellants moved to dismiss. The Kentucky court denied the motion to dismiss and concluded that Kentucky retained jurisdiction over the matter. On September 8, 1998, the Kentucky court dismissed the termination petition in the original action.
 {¶ 7} On February 11, 1999, the Kentucky court determined that the consent forms signed by Moore and Dorning on January 27, 1998, were void and concluded that the child should have been returned to them after their petition to voluntarily terminate their parental rights was dismissed. On April 8, 1999, the Ohio trial court ruled that the order issued by the Kentucky court on February 11, 1999, was not entitled to full faith and credit by the courts of the state of Ohio. Several appeals in both states followed, eventually leading to decisions by the highest courts in both states. See In re Adoption of Asente (2000),90 Ohio St.3d 91 (finding Ohio did not have jurisdiction over the matter and the Kentucky court's order was entitled to full faith and credit), and Moore v. Asente (2003), 110 S.W.3d 336 (finding the Kentucky trial court properly exercised jurisdiction, but reversing the trial court's holding as to the merits of the underlying custody action and remanding the matter to the trial court to determine whether custody of Justin should be vested in Moore and Dorning or appellants).
 {¶ 8} In July 1999, appellants contacted appellee regarding alleged legal malpractice. In an attempt to avoid interfering with the adoption litigation that was still pending at that time, on July 30, 1999, appellants and appellee entered into a tolling agreement, in which the parties agreed that the period from July 30, 1999 to the termination date would not be included in determining the applicability of any statute of limitations, laches, or any other defense based upon lapse of time, and that the agreement would not be deemed to revive any claim that was already barred on July 30, 1999.
 {¶ 9} On December 11, 2000, appellants filed a complaint against appellee and another Ohio attorney, who has since been dismissed, alleging legal malpractice. Appellants alleged that appellee committed malpractice by failing to review and advise appellants regarding the various legal documents and by failing to file an adoption petition in Ohio. On June 6, 2002, appellee filed a motion for summary judgment. The trial court granted the motion for summary judgment on February 4, 2004, finding that appellants' legal malpractice action against appellee was barred by the one-year statute of limitations for such actions. A judgment journalizing the decision was issued on March 1, 2004. Appellants appeal the trial court's judgment, asserting the following assignment of error:
The Trial Court erred in finding that there was no genuine issue of material fact as to the cognizable event thereby determining the statute of limitations.
 {¶ 10} Appellants argue in their assignment of error that the trial court erred in granting summary judgment to appellee. When reviewing a motion for summary judgment, courts must proceed cautiously and award summary judgment only when appropriate.Franks v. The Lima News (1996), 109 Ohio App.3d 408. Civ.R. 56(C) provides that, before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to the non-moving party. State ex rel.Howard v. Ferreri (1994), 70 Ohio St.3d 587, 589. When reviewing the judgment of the trial court, an appellate court reviews the case de novo. Franks, supra.
 {¶ 11} The time within which a party must bring a cause of action for legal malpractice is governed by R.C. 2305.11(A), which provides that a legal malpractice claim must be commenced within one year after the cause of action accrued. In Zimmie v.Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, the Supreme Court of Ohio established the following two-part test to determine when the statute of limitations begins to run on a claim for legal malpractice:
Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.
Id. at syllabus.
 {¶ 12} In Omni-Food Fashion, Inc. v. Smith (1988),38 Ohio St.3d 385, paragraph two of the syllabus, the Supreme Court of Ohio, in addition to outlining the above-quoted test, directed courts to also assess the particular facts of a legal malpractice claim and make the following determinations regarding the accrual date for such a claim: (1) when the injured party became aware, or should have become aware, of the extent and seriousness of the alleged legal problem; (2) whether the injured party was aware, or should have been aware, that the alleged injury was related to a specific legal transaction or undertaking previously rendered to the party; and (3) whether the alleged injury would put a reasonable person on notice of the need for further inquiry as to the cause of the injury.
 {¶ 13} Appellants do not dispute on appeal that the attorney-client relationship between them and appellee ended more than one year prior to the execution of the tolling agreement on July 30, 1999. We agree. Conduct indicating the end of the attorney-client relationship includes the client retaining another attorney to file a suit regarding the same subject matter for which the client had retained previous counsel. DiSabato v.Tyack Assoc. Co., L.P.A. (Sept. 14, 1999), Franklin App. No. 98AP-1282, citing Flynt v. Brownfield, Bowen Bally (C.A.6, 1989), 882 F.2d 1048, and Brown v. Johnstone (1982),5 Ohio App.3d 165. In the present case, on April 8, 1998, appellants hired attorney Eisenman to file the adoption petition in Ohio, which was the same reason for which they had hired appellee. Appellee did not bill appellants for any services after April 13, 1998. On June 5, 1998, Eisenman filed an adoption petition in Ohio. When viewed in a light most favorable to appellants, the facts reflect the attorney-client relationship between appellants and appellee ended, at the latest, on June 5, 1998, when appellants' newly-retained counsel filed an action in Ohio concerning the same matters for which appellants had hired appellee. See Burzynski ex rel. Estate of Halevan v. Bradley Farris Co., L.P.A. (Dec. 31, 2001), Franklin App. No. 01AP-782 (attorney-client relationship unquestionably ended when plaintiff retained new counsel who filed a lawsuit in federal court concerning the same matters for which defendants had represented plaintiff). Thus, appellants' action would be time-barred if the date of accrual was the termination of the attorney-client relationship.
 {¶ 14} Therefore, pursuant to Zimmie, we must determine if there is a later "cognizable event" at which time appellants first discovered or should have discovered appellee's alleged legal malpractice such that their legal malpractice action against appellee is not time-barred. A "cognizable event" is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. Spencer v. McGill (1993), 87 Ohio App.3d 267,278. As this court has noted, "[t]he focus should be on what the client was aware of and not an extrinsic judicial determination."McDade v. Spencer (1991), 75 Ohio App.3d 639, 643. The "cognizable event" puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies, and the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations. Flowers v. Walker (1992),63 Ohio St.3d 546, 549. The injured person need not be aware of the full extent of the injury before there is a cognizable event.Zimmie, supra, at 58. Rather, it is enough that some noteworthy event, the cognizable event, has occurred that does or should alert a reasonable person that a questionable legal practice may have occurred. Id. A client is also not permitted to exhaust all appellate remedies before the statute of limitations commences. Id. Determination of the date a cause of action for legal malpractice accrues is a question of law reviewed de novo by this court. Whitaker v. Kear (1997), 123 Ohio App.3d 413, 420.
 {¶ 15} In the present case, we agree with the trial court that the cognizable event, pursuant to Zimmie, was the Ohio court's July 8, 1998 dismissal. The July 8, 1998 dismissal was sufficient to alert a reasonable person that his or her prior attorney may have committed an improper act in the course of legal representation. The Ohio court's determination that Kentucky had jurisdiction and its subsequent dismissal sufficiently alerted appellants that appellee may have committed an improper act by failing to file the adoption petition in Ohio sooner. This finding is also consistent with the factors outlined in paragraph two of the syllabus in Omni-Food, supra. Appellants were clearly aware of the seriousness of the legal problem at that time, given the trial court's dismissal was of the entire adoption action in Ohio. Further, at the time of the Ohio court's dismissal, appellants should have been aware that the loss of jurisdiction in Ohio was directly related to appellee's alleged inactions during his representation. Once the Ohio court dismissed the action, appellants would have been on notice that, if appellee had filed the Ohio petition sooner, they may have been in a more satisfactory legal position. As of July 8, 1998, appellants could have no doubt that appellee had been unable to achieve the objectives he was hired to accomplish in Ohio: to file an adoption petition and complete the adoption of Justin. In addition, although the ultimate outcome of the July 8, 1998 dismissal was not final because appellants had filed a motion for relief from judgment as well as an appeal of the dismissal, appellants' attempts to obtain a different result did not affect the commencement of the statute of limitations. SeeZimmie, supra, at 58 (the commencement of the statute of limitations is not tolled until the client has exhausted all appellate remedies). Therefore, the cognizable event for determining the accrual date of the cause of action was the Ohio court's July 8, 1998 dismissal.
 {¶ 16} We also note that, as of the July 8, 1998 dismissal, appellants were, or should have been, aware that there were serious legal issues relating to the consents and legal risk statement. Several months prior to the July 8, 1998 dismissal, Moore and Dorning had purportedly revoked their consents and claimed the legal risk statement clearly delineated their right to do so. Although there had yet been no legal determination relating to these documents at this point, the focus is on what appellants were aware of and not an extrinsic judicial determination. See McDade, supra, at 643. Appellants were on notice by this date that the validity of the consents and the effectiveness of the legal risk statement were at issue and that appellee's representation of them regarding such may have been inadequate.
 {¶ 17} Therefore, because July 8, 1998, was more than one year before the tolling agreement was executed by the parties on July 30, 1999, and the tolling agreement provided that it did not revive any claim that was already barred as of the date of the agreement, appellants' legal malpractice claim was barred by the one-year statute of limitations for legal malpractice claims. For these reasons, appellants' assignment of error is overruled.
 {¶ 18} Accordingly, appellants' assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Petree and Sadler, JJ., concur.