[Cite as *Getch v. Orndorff,* 2013-Ohio-3973.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| CHERYL R. GETCH, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2012-G-3120** |
| JEFFREY T. ORNDORFF CO., L.P.A., et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 11M000368.

Judgment: Affirmed.

*Brian D. Spitz* and *Fred M. Bean,* 4568 Mayfield Road, Suite 102, South Euclid, OH 44121 (For Plaintiff-Appellant).

*Timothy D. Johnson,* Cavitch, Familo & Durkin Co, L.P.A., 1300 East Ninth Street, 20th Floor, Cleveland, OH 44114 (For Defendants-Appellees).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Cheryl R. Getch, appeals the summary judgment of the Geauga County Court of Common Pleas in favor of appellees, Jeffrey T. Orndorff Co., L.P.A., et al. (collectively referred to as "Orndorff"), on appellant's claim for legal malpractice against Orndorff. At issue is whether the cognizable events occurred before Getch discharged Orndorff and whether her malpractice claim is time-barred. Because we hold the trial court did not err in entering summary judgment, we affirm.

{¶2} The statement of facts that follows is based on the parties' depositions and evidentiary materials submitted on summary judgment. Getch testified in her deposition that, following the death of her husband, Donald Getch, in July 2009, she retained Orndorff, a local attorney, to represent her as executrix in the administration of her deceased husband's estate.

{¶3} Getch first met Orndorff in his office in Chardon, Ohio on August 20, 2009. During this meeting, Orndorff asked Getch to provide him with all documents in her possession regarding the assets and liabilities of her late husband. She said that in response to this request, she gathered a large amount of records, put them in a box, and gave them to Orndorff.

{¶4} Getch testified that after a few months, her family members became worried about Orndorff's performance and questioned his competence. They told her that she should "get rid of" Orndorff. However, she did not immediately follow their advice. She testified her brother-in-law, Sherwood Wilson, called Orndorff "on her behalf" and told him that Getch no longer required his services and that she was terminating their relationship.

{¶5} Further, Getch testified as follows:

{¶6} Q. When you * * * fired Mr. Orndorff, why did you do that?

{¶7} A. I was panicking. Things weren't getting done.

{¶8} Q. Had you expressed that to Mr. Orndorff before then?

{¶9} A. I tried.

{¶10} Q. What do you mean by that, you tried? Did you have conversations with him?

2

{¶11} A.  I called many occasions, but I wouldn't get phone calls back.

{¶12} * * *

{¶13} Q.  And do you know that he is not qualified as * * * someone knowledgeable in probate matters?

{¶14} * * *

{¶15} A.  I do now.

{¶16} * * *

{¶17} Q.  How do you know that?

{¶18} * * *

{¶19} A.  Truth?  Well, when you got a judge asking you to get your will probated and documents need signed and you can't get these things *because you can't get him to get the job done*, I had to call the judge because I was panicking.  He wanted papers from me I couldn't get.  So I called the judge and told them I couldn't get my files because Jeff's secretary said I couldn't get them until next week and I said no, I want them now.

{¶20} Q.  When did all that occur?

{¶21} * * *

{¶22} A.  About the time I gave him the $2,000 check.

{¶23} Q.  Which is dated January 21st?

{¶24} A.  Yeah.

{¶25} Q.  2010?

{¶26} A. Around in that general area I demanded my files and everything back. The judge sent me the papers I needed, I signed them and sent them back to the judge. That's how my husband's will got probated. (Emphasis added.)

{¶27} Getch testified that on January 21, 2010, she wrote a check to Orndorff for $2,000. She testified she wrote him this check "[b]ecause [she] was letting him go and [she] thought it was the fair thing to do. [She] thought [she] owed him money for whatever he did do for [her]." She testified that on that date, she knew she was "letting him go." She states in her appellate brief that on January 21, 2010, she gave Orndorff the check for $2,000. She testified that when she gave him this check, she told him his services were no longer needed and demanded her records and a copy of her file.

{¶28} Getch testified that on January 26, 2010, she and her son Brandon went to Orndorff's office together, and Orndorff gave them the materials she had previously given him and a copy of her file. She said she picked up these records because she was "going to switch attorneys." She said that when she picked up the records, she had already told Orndorff that he was discharged.

{¶29} Orndorff testified that on December 28, 2009, Getch's brother-in-law, Sherwood Wilson, called him and told him that he was calling for Getch and that she had discharged him. Orndorff said he could hear Getch on the phone in the background. Getch did not dispute that she was with Wilson during this phone call.

{¶30} Orndorff testified that on January 22, 2010, Getch gave him a check for $2,000 and told him he was terminated. On January 26, 2010, Getch and her son drove to Orndorff's office to pick up Getch's records, and Orndorff gave them her records.

4

{¶31} On January 28, 2010, Orndorff filed a motion to withdraw in the Lake County Probate Court, stating that he was discharged by Getch on January 22, 2010. On March 24, 2010, Orndorff filed a second motion to withdraw, advising the court that Getch had retained substitute counsel. On March 29, 2010, the Probate Court granted the motion. Orndorff never cashed the check Getch gave him.

{¶32} On January 26, 2011, Getch filed a complaint against Orndorff in the Cuyahoga County Court of Common Pleas, alleging legal malpractice, breach of contract, breach of fiduciary duty, and breach of confidentiality, demanding an unspecified amount of damages in excess of $25,000 for each claim. Orndorff filed a motion to transfer the case to the trial court due to improper venue. Over Getch's objection, the Cuyahoga County Court granted Orndorff's motion and transferred this case to the trial court.

{¶33} Orndorff filed an answer, denying the material allegations of the complaint and asserting various affirmative defenses, including Getch's failure to file her complaint within the applicable statute of limitations.

{¶34} After the parties completed discovery, including depositions, Orndorff filed a motion for summary judgment, arguing that Getch failed to file her complaint within the one-year statute of limitations for legal malpractice claims. Getch filed a brief in opposition, arguing her complaint was timely filed. She argued the statute of limitations for malpractice did not begin to run until she picked up her file on January 26, 2010. She also argued that her additional claims were separate from her malpractice claim and that each had its own statute of limitations.

**{¶35}** In granting Orndorff's motion for summary judgment, the trial court found that each of Getch's claims was a claim for legal malpractice because each arose from the attorney-client relationship and was based on Getch's allegation that Orndorff failed to adequately perform his duties as her attorney. Thus, the one-year statute of limitations applied to her case.

**{¶36}** The trial court found that the statute of limitations for Getch's legal malpractice claim began running on January 22, 2010, the date she terminated the attorney-client relationship with Orndorff. The court based this finding on Getch's deposition testimony that on January 21, 2010, she wrote a check in the amount of $2,000 because she was letting him go, and gave it to Orndorff on either January 21, 2010 or January 22, 2010. The court found that, although the record does not indicate the exact date on which Getch decided that Orndorff was not performing his services adequately, it had to be prior to January 21, 2010, because the sole purpose she wrote the check on that date was because she was letting him go. The trial court found that Getch's affidavit, submitted in opposition to summary judgment, contradicts her prior deposition because in her affidavit she said she made the payment due to Orndorff's invoices. The court found that, because Getch offered no explanation for this contradiction, the court was required to base its decision on her deposition. The court found that, because Getch filed her complaint on January 26, 2011, the complaint was filed beyond the one-year statute of limitations and therefore was time-barred.

**{¶37}** Getch appeals the trial court's judgment, asserting the following for her sole assignment of error:

6

**{¶38}** "The Trial Court Committed Reversible Error In Determining That Getch Filed Her Complaint Outside Of The Statute Of Limitations For Her Legal Malpractice Claim."

**{¶39}** Appellate courts review a trial court's grant of summary judgment de novo. *Alden v. Kovar*, 11th Dist. Trumbull Nos. 2007-T-0114 and 2007-T-0115, 2008-Ohio-4302, ¶34.

**{¶40}** In order for summary judgment to be granted, the moving party must prove that

**{¶41}** (1) no genuine issue as to any material fact remains to be litigated,

(2) the moving party is entitled to judgment as a matter of law, and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996).

**{¶42}** [T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The "portions of the record" to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case.

7

(Emphasis omitted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296 (1996).

{¶43} If the moving party satisfies its burden, then the nonmoving party has the burden to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E).

{¶44} With respect to a claim for legal malpractice, "R.C. 2305.11(A) provides that a party must bring [such claim] within one year after the cause of action accrued." *Biddle v. Maguire & Schneider, LLP*, 11th Dist. Trumbull No. 2003-T-0041, 2003-Ohio-7200, ¶17. In interpreting this statute, the Supreme Court of Ohio in *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54 (1989), held:

{¶45} Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies *or* when the attorney-client relationship * * * terminates, *whichever occurs later*. (Emphasis added.) *Id.* at syllabus, citing *Omni Food Fashion, Inc. v. Smith*, 38 Ohio St.3d 385 (1988).

{¶46} "*Zimmie* and *Omni-Food* require two factual determinations: (1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? *The latter of*

8

*these two dates is the date that starts the running of the statute of limitations."* Smith v. Conley, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶4.

**{¶47}** A "cognizable event" is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. *Spencer v. McGill*, 87 Ohio App.3d 267, 278 (8th Dist.1993). "[T]he focus should be on what the client was aware of and not an extrinsic judicial determination." *McDade v. Spencer*, 75 Ohio App.3d 639, 643 (10th Dist.1991). "The 'cognizable event' puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies, and the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations." *Asente v. Gargano*, 10th Dist. Franklin No. 04AP-278, 2004-Ohio-5069, ¶14, citing *Flowers v. Walker*, 63 Ohio St.3d 546, 549 (1992). The client need not be aware of the full extent of the injury before there is a cognizable event. *Asente, supra*; *Zimmie, supra*, at 58. "Rather, it is enough that some noteworthy event, the cognizable event, has occurred that does or should alert a reasonable person that *a questionable legal practice may have occurred.*" *Asente, supra,* citing *Zimmie, supra.*

**{¶48}** Alternatively, the termination of the attorney-client relationship depends on an affirmative act by either party that signals the end of the relationship. *Mastran v. Marks*, 9th Dist. Summit No. 14270, 1990 Ohio App. LEXIS 1219, *9 (Mar. 28, 1990). *Accord Savage v. Kucharski*, 11th Dist. Lake No. 2005-L-141, 2006-Ohio-5165, ¶23; *Trickett v. Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A.*, 11th Dist. Portage No. 2000-P-0105, 2001 Ohio App. LEXIS 4806, *7 (Oct. 26, 2001). The attorney-client relationship may terminate by a communication that the relationship has ended.

9

*Merkosky v. Wilson*, 11th Dist. Lake No. 2008-L-017, 2008-Ohio-3252, ¶24. This communication can be written, as in a termination letter, or oral. *Savage, supra; Merkosky, supra.* The issue of when the attorney-client relationship is terminated is a question of fact. *Trickett, supra*, citing *Omni-Food, supra*, at 388. For a trial court to grant summary judgment based on the affirmative act of either party terminating the relationship, such "act must be clear and unambiguous, so that reasonable minds can come to but one conclusion from it." *Id.*

{¶49} The determination of the date a legal malpractice claim accrues is a question of law reviewed de novo by an appellate court. *Cicchini v. Streza*, 160 Ohio App.3d 189, 2005-Ohio-1492, ¶17 (5th Dist.), citing *Whitaker v. Kear*, 123 Ohio App.3d 413, 420 (4th Dist.1997).

{¶50} As a preliminary matter, we note that on appeal, Getch has abandoned the argument she advanced in the trial court that, in addition to her claim for legal malpractice, she has three other claims, each of which has a separate statute of limitations. She therefore does not appeal the trial court's finding that the only claim she asserted is one for legal malpractice.

{¶51} Under her sole assignment of error, Getch asserts two issues. For her first issue, she argues a genuine issue of material fact exists as to the date the attorney-client relationship terminated.

{¶52} Getch testified during her deposition that on January 21, 2010, she wrote a check to Orndorff for $2,000. She said she wrote the check "[b]ecause [she] was "letting him go" and thought it was the fair thing to do. [She] thought [she] owed him money for whatever he did do for [her]." She testified that when she wrote the check,

10

she knew she was "letting him go." She states in her brief that on January 21, 2010, she gave Orndorff the check. At that time, she told him his services were no longer needed. Getch also testified that when she gave him the check, she demanded her records back and a copy of her file. Orndorff agreed with Getch's testimony regarding this meeting, but testified it took place on January 22, 2010. Because Getch said she wrote the check because she was letting Orndorff go and told him his services were no longer required when she gave it to him, her check was the functional equivalent of a termination letter. We agree with the trial court's finding that, by these acts, Getch clearly and unambiguously terminated the attorney-client relationship on January 22, 2010.

{¶53} Getch ignores her deposition testimony that she discharged Orndorff. Instead, she argues the statute of limitations did not begin to run until March 29, 2010, the date on which the Probate Court granted Orndorff's second motion to withdraw. Consequently, Getch argues the trial court erred when it found that the statute of limitations began to run on January 22, 2010. We do not agree. The Supreme Court of Ohio in *Conley*, *supra*, held:

> {¶54} The determination [of the date of termination of an attorney-client relationship] is not dependent on local rules of court. Attorneys are required to follow local rules and must file the appropriate motion with a court to withdraw from representation, but the date of termination of the attorney-client relationship for purposes of R.C. 2305.11 is determined by the actions of the parties. *Id.* at ¶12.

**{¶55}** This court followed the analysis and holding of the Supreme Court of Ohio in *Conley* in *Duvall v. Manning*, 11th Dist. Lake No. 2010-L-069, 2011-Ohio-2587, ¶33.

**{¶56}** Getch concedes that Orndorff was required by Rule 78.4 of the Lake County Probate Court to file a motion to withdraw. Based on the foregoing authority, the date on which the attorney-client relationship terminated is determined by the conduct of the parties. As a result, the date on which Orndorff's motion to withdraw was filed or granted is irrelevant to the analysis.

**{¶57}** Alternatively, Getch argues the statute of limitations began to run on January 26, 2010, the date she and her son picked up her records and a copy of her file from Orndorff. However, the Eighth Appellate District rejected this argument in *Chambers v. Melling, Harding, Schuman, and Montello,* 8th Dist. Cuyahoga No. 85045, 2005-Ohio-2456. In *Chambers*, the Eighth District held that the limitations period began to run on the date of the client's termination letter. *Id.* at ¶19. The court held it was irrelevant that the client retrieved his file contents from the attorney after the date of the termination letter. *Id.* Thus, the fact that Getch and her son picked up a copy of her file and her records from Orndorff on January 26, 2010, is also irrelevant to the analysis.

**{¶58}** Getch argues she testified she did not know whether she was letting Orndorff go on January 21, 2010. However, this argument ignores her deposition during which she testified that on January 21, 2010, she wrote the check to Orndorff because she was letting him go and that on that date, she knew she was letting him go.

**{¶59}** Getch also argues that in writing the check, she was merely trying to pay Orndorff for his services based on "his previous requests for payment." However, this argument is not supported by the record. Getch did *not* testify in her deposition or state

12

in her affidavit that Orndorff ever requested payment of his fees. To the contrary, as noted above, Getch testified she wrote the check "[b]ecause [she] was letting him go and [she] thought it was the fair thing to do. [She] thought [she] owed him money for whatever he did do for [her]." Thus, although Getch decided to pay Orndorff for the work he had done, she testified she wrote him the check because she was letting him go.

{¶60} Next, Getch argues the fact that she wrote the check on January 21, 2010, without more, is insufficient to show the date of termination of the attorney-client relationship. However, the date she wrote the check is not the only evidence of the date she terminated the relationship. She states in her brief that she gave Orndorff the check on January 21, 2010. She testified that at that time, she told him his services were no longer needed and demanded her records back.

{¶61} Getch also argues there is no evidence of when she gave the check to Orndorff. Once again, in making this argument, Getch ignores her deposition. Getch testified she wrote the check to Orndorff on January 21, 2010, and states in her brief that she gave it to him on that date. Further, Orndorff testified she gave him the check on January 22, 2010. Thus, Getch gave the check to Orndorff on either January 21, 2010 or January 22, 2010, either of which dates is beyond the one-year statute of limitations.

{¶62} Next, as the trial court correctly noted, Getch's affidavit, which she filed in opposition to summary judgment, directly contradicts her deposition testimony. In contrast to her deposition testimony, Getch stated in her affidavit that she wrote the check based on Orndorff's invoices and that she did not decide to discharge him until

13

January 26, 2010. The Supreme Court of Ohio in *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, held: "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." *Id.* at paragraph three of the syllabus. Here, Getch did not offer any explanation for the inconsistencies between her affidavit and her prior deposition testimony concerning the reason she wrote the check or the date she decided to let Orndorff go. For this reason, the trial court correctly disregarded the inconsistent statements in Getch's affidavit. It is noteworthy that on appeal, Getch does not even attempt to explain the glaring contradictions between her deposition and her affidavit.

{¶63} Orndorff thus submitted evidentiary material establishing that Getch terminated their attorney-client relationship at the latest on January 22, 2010. This shifted the burden to Getch pursuant to *Dresher*, *supra*, to establish a genuine issue of material fact with respect to the date the relationship terminated. She was thus required, but failed, to present evidence that she terminated the relationship within the limitations period, i.e., on or after January 26, 2010. As a result, the trial court did not err in finding that Getch terminated the attorney-client relationship on January 22, 2010.

{¶64} For her second issue, Getch argues there is a genuine issue of material fact regarding the date of the cognizable event.

{¶65} The trial court found that since Getch wrote the check on January 21, 2010 because she was letting Orndorff go, the date of the cognizable event had to be prior to that date. Further, the court found that, since Getch terminated the attorney-client relationship on January 22, 2010, the termination occurred after the date of the

14

cognizable event. Therefore, the statute of limitations began to run on January 22, 2010.

{¶66} This court considered the date of a cognizable event in *Savage*, *supra*. In *Savage*, the client terminated the attorney-client relationship on May 13, 2002. This court held, "unless there was a cognizable event occurring at a later date, whereby [the client] discovered that his injury was related to [the attorney's] act or non-act, [the client's] complaint for legal malpractice would have to have been filed by May 13, 2003." *Id*. at ¶24. In *Savage*, this court held that since the client was aware of the alleged malpractice prior to his termination of the attorney-client relationship, the claim accrued and the statute of limitations began to run on the termination date, May 13, 2002.

{¶67} Further, the Eighth District considered the date of a cognizable event in *Chambers*, *supra*. There, the Eighth District held that the client's June 2, 2002 letter to the attorney terminating their relationship manifested the client's intent to terminate the attorney-client relationship and *thus constituted a cognizable event*. *Id*. at ¶19. The appellate court held it was "irrelevant that [the client] delivered the letter to [the attorney] * * * after June 2, 2002. * * * [I]t is the date the letter was drafted which determines the cognizable event." *Id.* The court further stated: "On June 2, 2002, [the client] intended to discontinue his attorney-client relationship with the [attorney] and it was this date when [the client] undeniably was aware of the conduct he now alleges constitutes malpractice." *Id.*

{¶68} Applying the foregoing authority here, three cognizable events occurred, any one of which was sufficient to start the running of the statute of limitations. First, Getch's brother-in-law called Orndorff on December 28, 2009, and said that Getch

15

discharged him. The brother-in-law made this call to Orndorff on Getch's behalf and in her presence.

**{¶69}** Second, because Getch testified she was panicking over Orndorff's failure to perform acts she believed were necessary to administer the estate, she had to believe "she may have an injury caused by her attorney." This is the definition of a cognizable event. *Conley, supra.*

**{¶70}** Third, Getch's act of writing the check was a cognizable event because it manifested her intent to terminate the parties' attorney-client relationship. *Chambers, supra.* When she wrote the check, she was undeniably aware of the conduct she now alleges constitutes malpractice. *Id.* In the complaint, she alleged that Orndorff negligently administered her husband's estate. She alleged Orndorff "did little work" in administering the estate and "failed to prepare and file documentation that would have assisted Plaintiff's case." Thus, the same conduct that caused Getch to discharge Orndorff is alleged as grounds of her complaint.

**{¶71}** While Getch may not have discovered all of the relevant facts in support of her claim, the foregoing events constituted cognizable events since they alerted her or should have alerted her "that * * * improper [legal work] ha[d] taken place." *Zimmie, supra*, at 58.

**{¶72}** Orndorff thus submitted evidence that the cognizable events occurred before Getch discharged him on January 22, 2010. Because Getch filed her complaint on January 26, 2011, she had the burden to present evidence that a cognizable event occurred within one year of the filing of the complaint, i.e., on or after January 26, 2010. Because she failed to do so, the trial court did not err in finding that the cognizable

16

events occurred before Getch discharged Orndorff. Since the cognizable events and the termination date occurred on or before January 22, 2010, the trial judge did not err in finding the complaint was time-barred.

{¶73} We therefore hold the trial court did not err in granting summary judgment in favor of Orndorff on Getch's legal malpractice claim.

{¶74} For the reasons stated in the opinion of this court, Getch's assignment of error is overruled. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.

TIMOTHY P. CANNON, P.J., concurs in judgment only, with a Concurring Opinion,

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.

_____

TIMOTHY P. CANNON, P.J., concurs in judgment only, with a Concurring Opinion.

{¶75} I respectfully concur in judgment only with the opinion of the majority.

{¶76} I agree with the majority's conclusion that the statute of limitations for a legal malpractice action begins to run either (1) when the attorney-client relationship has been terminated *or* (2) when a cognizable event occurs, such that the "client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies"—*whichever occurs later*. *Zimmie v. Calfee*, 43 Ohio St.3d 54, 58 (1989), citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385 (1988), paragraph one of the syllabus. However, I do not agree with the trial court and the majority's interpretation and application of the law to the facts of this case.

17

**TERMINATION OF RELATIONSHIP**

**{¶77}** The date upon which an attorney-client relationship is terminated, for the purpose of determining when a legal malpractice cause of action accrues, depends on an affirmative act by either party that communicates to the other that the relationship has been terminated. *Mastran v. Marks*, 9th Dist. Summit No. 14270, 1990 Ohio App. LEXIS 1219, *9 (Mar. 28, 1990). *See also Merkosky v. Wilson*, 11th Dist. Lake No. 2008-L-017, 2008-Ohio-3252, ¶24 ("the attorney-client relationship may terminate by a communication"); and *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶12 ("the date of termination * * * for purposes of R.C. 2305.11 is determined by the actions of the parties").

**{¶78}** The majority points to Getch's deposition testimony, which states she wrote the check to Orndorff on January 21, 2010, because she was "letting him go." However, her subjective intent to terminate Orndorff when writing out the check is insufficient to terminate the relationship if it was not also communicated to Orndorff in some way. *Duvall v. Manning*, 11th Dist. Lake No. 2010-L-069, 2011-Ohio-2587; *Mastran*, *supra*. Thus, as a matter of law, it cannot be held that the relationship terminated because Getch wrote the check on January 21, 2010.

**{¶79}** However, Getch did testify in her deposition that when she gave the check to Orndorff she communicated to him that his services were no longer required. Orndorff's deposition testimony confirms this. Their testimony conflicts as to whether this conversation occurred on January 21 or January 22, 2010. Either way, it was not error for the trial court to determine that this affirmative act was what terminated the attorney-client relationship. Accordingly, the date on which Getch's son picked up her

18

file from Orndorff's office, i.e. January 26, 2010, is irrelevant to the analysis, as it occurred after the attorney-client relationship had been terminated.

**DISCOVERY OF COGNIZABLE EVENT**

**{¶80}** Patterned after medical malpractice cases, the Ohio Supreme Court has adopted the "discovery rule" as an alternative to the "termination rule" in determining when a cause of action for legal malpractice begins to accrue. *Omni-Food & Fashion*, 38 Ohio St.3d at 387. A "cognizable event" occurs when the injured party discovers or should have discovered *that she was injured* by an act or non-act of her attorney. *Zimmie*, 43 Ohio St.3d 54 at syllabus, citing *Omni-Food & Fashion*, *supra*. Determining the date of a cognizable event requires the trial court to make very specific factual findings:

> **{¶81}** [W]hen the injured party became aware, or should have become aware, of the extent and seriousness of his or her alleged legal problem; whether the injured party was aware, or should have been aware, that the damage or injury alleged was related to a specific legal transaction or undertaking previously rendered him or her; and whether such damage or injury would put a reasonable person on notice of the need for further inquiry as to the causes of such damage or injury. *Omni-Food & Fashion* at 388.

**{¶82}** The trial court held, and the majority agrees, that the date of the cognizable event "had to be prior to January 21, 2010" because that was the date Getch wrote the check to Orndorff. The trial court states Getch's sole purpose for writing this check was because she had "decided that Mr. Orndorff was not performing his duties

19

satisfactorily" and "was letting him go." However, as recited in the standard above, a cognizable event requires much more than a general dissatisfaction with one's attorney. It must be an event significant enough to cause a reasonable person to be aware that a legal wrong has been committed and thereby put the client on notice that she should pursue possible remedies. *See Powell v. Rion*, 2d Dist. Montgomery No. 24756, 2012-Ohio-2665, ¶18 ("[i]t is not sufficient that the client be dissatisfied with the advice or its result, but rather that the harm be of such a nature and degree that the reasonable person client would be alerted that the harm was the result of something that his or her attorney did legally wrong"). The fact that a client wants to change attorneys could be based on a number of factors, not all of which necessarily assess that the attorney had engaged in professional negligence. Thus, determination of the date of the "cognizable event" must be based on something other than the date of termination of the relationship.

{¶83} The majority concludes that, prior to January 26, 2010, "three cognizable events occurred, any one of which was sufficient to start the running of the statute of limitations." First, the majority cites the phone call made by Getch's brother-in-law "Woody" to Orndorff in an attempt to discharge him as a cognizable event. "Woody" had no authority to terminate an attorney-client relationship to which he was not a party. Further, the phone call did not indicate that Getch had become aware of a legal wrong that may have caused her injury. A decision to terminate an attorney is not always based on an awareness or suspicion of malpractice, and the evidence shows nothing more than Getch and her family had become worried and dissatisfied with Orndorff. The majority's focus on this phone call is misplaced.

**{¶84}** Second, the majority states that because Getch was "panicking over Orndorff's failure to perform acts she believed were necessary to administer the estate, she *had to* believe 'she may have an injury caused by her attorney.'" (Emphasis added.) The majority is making an impermissible assumption in labeling this as a cognizable event. "[T]he focus should be on what the client was aware of and not an extrinsic judicial determination." *Hilario v. Taft*, 8th Dist. Cuyahoga No. 95262, 2011-Ohio-1742, ¶21. Based on the record, more than one reasonable conclusion could be reached from the fact that Getch was panicking: it could have been mere impatience or dissatisfaction, not that she was aware of an injury caused by Orndorff.

**{¶85}** Third, the majority states that "Getch's act of writing the check was a cognizable event because it manifested her intent to terminate the * * * relationship." This analysis again makes an assumption not in the record: that she was terminating Orndorff because she was aware of the possibility that she had been injured by his failure to properly advise her regarding the estate. Further, even if this assumption were proven, the cognizable event would be whatever had prompted her to write the check—not the act of writing the check itself.

**{¶86}** There is, in fact, no evidentiary material in the record to establish when a "cognizable event" occurred. However, under the facts of this case, Orndorff was still entitled to summary judgment.

**{¶87}** Normally, by moving for summary judgment on the basis that the statute of limitations had expired, Orndorff would have the burden to produce evidence from which reasonable minds could only reach the conclusion that a cognizable event had occurred prior to January 26, 2010. Other courts have stated that the party asserting the statute

21

of limitations defense has the burden of "identifying the date of the 'cognizable event.'" *Powell*, *supra*, ¶8, citing *Werts v. Penn*, 164 Ohio App.3d 505, 2005-Ohio-6532, ¶11 (2d Dist.). However, this has the potential, under certain fact patterns, to create an irreconcilable dilemma for the moving party.

**{¶88}** Orndorff testified at deposition that he properly advised Getch during the course of his representation. He took the position that he did *nothing* to cause harm to Getch. Therefore, according to him, there never *was* a cognizable event. This should satisfy his burden with regard to whether any "cognizable event" occurred before January 26, 2010. He is not obligated to assert that he was negligent in some way or that he did anything to cause harm to appellant in such a way that she knew, or should have known, of such harm. If he had the burden to establish the date of the cognizable event under these facts, it would be tantamount to him having to produce evidence of an event that he testified never occurred.

**{¶89}** As a result, under the *Dresher v. Burt*, 75 Ohio St.3d 280 (1996) reciprocal burden rule, this placed upon Getch the burden of establishing the date on which the "cognizable event" occurred. Getch simply did not meet that burden. Only Getch knows when she "knew or should have known" that she had been harmed. However, she asserts in her brief that Orndorff did not present sufficient evidence in this regard. The fact is, there is no testimony or other evidence as to when she knew she had been harmed. It could have been prior to her termination of the relationship, or it could have been later. The point is, only she knows, and she has never indicated when she first knew she had been harmed.

22

**{¶90}** In summary, I concur with the majority's decision to affirm summary judgment in this case. In a malpractice case where the defendant denies wrongdoing, claiming there was no harm caused by professional negligence, the contention is there never was a cognizable event. In that case, the burden is on the plaintiff to respond to the motion for summary judgment with evidentiary material sufficient to establish when the plaintiff knew or should have known that a cognizable event occurred. This evidence must be sufficient to raise a question of fact regarding the date of any such cognizable event. In this case, since no such evidence was produced, the grant of summary judgment was proper.

_____

DIANE V. GRENDELL, J., concurs in judgment only, with a Concurring Opinion.

**{¶91}** I concur in the judgment to affirm the decision of the lower court granting summary judgment in favor of Jeffrey T. Orndorff Co., L.P.A. However, I reach this conclusion by a less complicated trail than my fellow judges.

**{¶92}** Under Ohio law, the date that the statute of limitations begins to run on a claim of legal malpractice is the latter of "a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus.

23

**{¶93}** In this case, the latter of these events occurred on January 21 or 22, 2010, when Cheryl Getch tendered payment to Orndorff and advised him that his services were no longer needed. It is not necessary to consider possible cognizable events that occurred prior to the termination of Orndorff's services, nor is that decision relevant.

**{¶94}** Moreover, the effort to address the issue of possible cognizable events leads to the erroneous conclusion by the other concurring judge that the burden of proof as to the running of the statute of limitations in a legal malpractice case can somehow shift to the plaintiff. That is simply incorrect.

**{¶95}** The statute of limitations in this case began to run on January 21 or 22, 2010, the date on which Cheryl Getch terminated the attorney-client relationship with Orndorff.

**{¶96}** The decision of the trial court is correct. For this reason, I would affirm that decision.