[Cite as *Harris v. Reedus*, 2015-Ohio-4962.]

# IN THE COURT OF APPEALS OF OHIO

# TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Felice L. Harris, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-181 |
| v. | : | (C.P.C. No. 14CVA-4020) |
| Benita D. Reedus, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

# D E C I S I O N

### Rendered on December 1, 2015

*Hollern & Associates*, and *Edwin J. Hollern*, for appellant.

*Reminger Co. L.P.A., Jason D. Winter* and *Julian T. Emerson*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Felice L. Harris ("appellant"), appeals the February 13, 2015 judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Benita D. Reedus ("appellee"). For the reasons that follow, we reverse the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} This action for legal malpractice arises from appellee's representation of appellant in her divorce action, which we previously considered in *Howard v. Howard*, 10th Dist. No. 14AP-292, 2014-Ohio-5248. Although we discussed the history of this matter in our prior decision, the following facts are relevant to the disposition of the present appeal.

{¶ 3} On June 2, 2011, appellant, a licensed attorney, filed pro se a complaint for divorce. On August 15, 2012, appellant entered into a written fee agreement with appellee

for legal services in her divorce action. The agreement, which both parties signed, encompassed work "through a final Judgment Entry," not including "the cost of appeals or post-decree enforcement of Orders" and provided that the agreement "may not be modified or changed in any manner except by a subsequent written Agreement signed by both parties." (Agreement for Legal Services, Motion for Summary Judgment, Exhibit F.) In the course of her representation of appellant, appellee drafted a divorce agreement dividing the parties' assets and establishing December 31, 2009 as the termination date of the marriage.

{¶ 4} On October 12, 2012, the domestic relations court adopted the divorce agreement drafted by appellee, filing it as an agreed judgment entry and decree of divorce, which both parties and their respective counsel signed. The agreement included provisions distributing one-half of the marital share of appellant's ex-husband's pension with the Ohio Public Employment Retirement System ("OPERS") by means of a Division of Property Order ("DOPO"), which was to be completed by both parties.[1] Specifically, the agreement provided that appellant was "to receive one-half of the marital share of the Defendant's OPERS retirement from the date of the marriage until December 31, 2009 * * *. The DOPO required herein shall be prepared by Pension Evaluators and the cost will be divided equally between the parties. Both parties are ordered to cooperate with Pension Evaluations to effectuate completion of the DOPO within 120 days of the signing of this order." (Motion for Summary Judgment, Exhibit G, 3-4.)

{¶ 5} In April 2013, due to her former husband's noncooperation with the DOPO obligations in the divorce decree, appellant contacted another attorney to assist with enforcement. On October 11, 2013, appellant, through new counsel, filed a motion pursuant to Civ.R. 60(B) in the domestic relations court for relief from the October 12, 2012 divorce decree. At the hearing on the motion, appellant explained that she misunderstood how she would be receiving her marital share of her ex-husband's OPERS benefits. As of the date of the divorce, appellant was aware that her ex-husband was receiving a monthly benefit payment from OPERS. Appellant believed, based upon

---

[1] "Using the process set forth in R.C. 3105.80 through 3105.90, a trial court can issue a DOPO, thereby requiring the administrator of a public-retirement program to distribute benefits divided by a divorce decree directly to a nonmember ex-spouse." *Howard* at ¶ 3, citing *Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, ¶ 13 (10th Dist.), fn.3.

representations allegedly made by appellee, that she would "be getting a lump sum payment" in the amount of her share of all the monthly payments that OPERS had previously made to her ex-husband from the date of the divorce until the implementation of the DOPO. (Feb. 12, 2014 Hearing, Motion for Summary Judgment, Exhibit K, 12.) Appellant specifically stated when she learned that she was not going to receive a lump-sum payment:

> Q.: So, Felice, you then took all the necessary steps to attempt to get your ex to cooperate with the -- doing the DOPO. When did you then learn that the lump sum was not going to approve?
>
> [Appellant]: It was probably March. It was probably March of 2013.
>
> Q.: All right. And, after that point you ended up seeking counsel and eventually the decision was made to file the 60(B), is that correct?
>
> [Appellant]: That's correct.
>
> Q.: All right. Felice, would you have negotiated the resolution that you had, had you been aware that there was going to be no lump sum payment for those twenty-four months or so?
>
> [Appellant]: No.

(Feb. 12, 2014 Tr. 16, Motion for Summary Judgment, Exhibit K.)

{¶ 6} On March 12, 2014, the domestic relations court denied appellant's Civ.R. 60(B) motion. Upon appeal, we affirmed the March 12, 2014 decision of the domestic relations court. *Howard* at ¶ 16.

{¶ 7} On April 11, 2014, appellant filed a complaint in the trial court alleging that appellee committed legal malpractice. In her complaint, appellant alleged that she "first learned that she should seek legal representation for a potential legal malpractice claim * * * on April 17, 2013." (Complaint, 2.) On September 29, 2014, appellee filed a motion for summary judgment asserting that no material issues of fact remained for trial because appellant's claim was time-barred as a matter of law. On October 21, 2014, appellant filed

a memorandum contra appellee's motion for summary judgment. On February 13, 2015, the trial court granted summary judgment in favor of appellee.

## II. Assignment of Error

{¶ 8}   Appellant appeals assigning the following error for our review:

THE TRIAL COURT ERRED BY GRANTING DEFEND-ANT/APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶ 9}   In her assignment of error, appellant argues that the trial court erred by granting summary judgment in favor of appellee because it incorrectly determined the cognizable event for purposes of the statute of limitations of appellant's legal malpractice claim.

{¶ 10} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 11} "Statutes of limitations serve a gate-keeping function for courts by ' "(1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay—specifically, the difficulties of proof present in older cases." ' " *Flagstar Bank, F.S.B. v. Airline Union's Mtge. Co.*, 128 Ohio St.3d 529, 2011-Ohio-1961, ¶ 7, quoting *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, ¶ 42, quoting *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, ¶ 10. Nevertheless, "statutes of limitations are remedial in nature and are to be given a liberal construction to permit cases to be decided upon their merits, after a court indulges every reasonable presumption and resolves all doubts in favor of giving, rather than denying, the plaintiff an opportunity to litigate." *Flagstar* at ¶ 7, citing *Draher v. Walters*, 130 Ohio St. 92, 94

(1935), *overruled on other grounds*, *Peters v. Moore*, 154 Ohio St. 177 (1950). *See also DeTray v. Mt. Carmel Health*, 10th Dist. No. 96APE08-1010 (Apr. 17, 1997).

{¶ 12} Generally, a cause of action exists from the time the wrongful act is committed. *Flagstar* at ¶ 13. However, because application of the general rule in certain circumstances " ' "would lead to the unconscionable result that the injured party's right to recovery can be barred by the statute of limitations before he is even aware of its existence," ' " Ohio has created an exception commonly known as the discovery rule. *Id.* at ¶ 13, quoting *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 87 (1983), quoting *Wyler v. Tripi*, 25 Ohio St.2d 164, 168 (1971). The discovery rule provides that a cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should know, that he or she has been injured by the conduct of the defendant. *Flagstar* at ¶ 14.

{¶ 13} The Supreme Court of Ohio has adopted the discovery rule in legal malpractice cases. *Skidmore & Hall v. Rottman*, 5 Ohio St.3d 210 (1983), paragraph one of the syllabus; *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54 (1989), paragraph one of the syllabus. Under R.C. 2305.11(A), a legal malpractice claim must be commenced within one year following the date upon which the cause of action accrued. *See Bowman v. Tyack*, 10th Dist. No. 08AP-815, 2009-Ohio-1331, ¶ 9. The Supreme Court has established the following two-part test to ascertain when a claim for legal malpractice accrues under the discovery rule:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie* at paragraph one of the syllabus. Thus, a court must make two factual determinations: "(1) When should the client have known that he or she may have an injury caused by his or her attorney? and (2) When did the attorney-client relationship terminate? The latter of these two dates is the date that starts the running of the statute of limitations." *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, ¶ 4.

{¶ 14} The determination of the date of accrual of a cause of action for legal malpractice is a question of law that an appellate court reviews de novo. *Bowman* at ¶ 10, citing *Ruckman v. Zacks Law Group*, 10th Dist. No. 07AP-723, 2008-Ohio-1108, ¶ 17; *Smith v. Barclay*, 10th Dist. No. 11AP-798, 2012-Ohio-5086, ¶ 21, citing *DiSabato v. Thomas M. Tyack & Assoc. Co., L.P.A.*, 10th Dist. No. 98AP-1282 (Sept. 14, 1999).

{¶ 15} Here, appellant admits that the attorney-client relationship in question terminated over one year before she filed her complaint. Thus, we must examine when a cognizable event occurred such that appellant should have known that she had an injury caused by her attorney. *Id.* at ¶ 4. We have previously discussed the concept of a "cognizable event," as follows:

> "A 'cognizable event' is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. As this court has noted, the focus should be on what the client was aware of and not an extrinsic judicial determination. The 'cognizable event' puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies, and the plaintiff need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations. The injured person need not be aware of the full extent of the injury before there is a cognizable event. Rather, it is enough that some noteworthy event, the cognizable event, has occurred that does or should alert a reasonable person that a questionable legal practice may have occurred. A client is also not permitted to exhaust all appellate remedies before the statute of limitations commences."

*Bowman* at ¶ 12, quoting *Asente v. Gargano*, 10th Dist. No. 04AP-278, 2004-Ohio-5069, ¶ 11, *discretionary appeal not allowed*, 105 Ohio St.3d 1439, 2005-Ohio-531.

{¶ 16} Here, appellant argues that the cognizable event did not occur until April 17, 2013 when she first met with new counsel and learned that there was a problem with her divorce decree. Appellant supports her contention with reference to her own affidavit and the affidavits of her new attorneys who represented her in post-divorce proceedings. The trial court found, based on appellant's testimony at the Civ.R. 60(B) hearing, that the cognizable event occurred in March 2013 when appellant "first learned that OPERS would not pay her in a lump sum." (Feb. 13, 2015 Decision and Entry, 5.)

{¶ 17} Upon our independent review, "indulg[ing] every reasonable presumption and resolv[ing] all doubts" in a light most favorable to appellant, we find that the cognizable event occurred no earlier than April 17, 2013. *Flagstar* at ¶ 7. While appellant stated that she "learn[ed] that the lump sum was not going to approve" in March 2013, it is not clear whether the lack of approval resulted from her ex-husband's noncooperation or because of issues with the drafting of the divorce decree. (Feb. 12, 2014 Tr. 16, Motion for Summary Judgment, Exhibit K.) Appellant's affidavit, in which she states that she learned in March 2013 that the consulting company processing the DOPO "would not move forward and approve anything (the lump sum or the monthly payments) without [her ex-husband's] release," supports the conclusion that appellant's testimony was referring to her ex-husband's noncooperation. (Appellant's Affidavit attached to Memo Contra, 1.)

{¶ 18} Appellee suggests that appellant's affidavit cannot be considered to create a genuine issue of material fact because it contains "naked contradictions" of appellant's prior testimony. (Appellee's Brief, 32.) However, we have held that "an affidavit does not contradict [testimony] if it explains, supplements or clarifies the earlier testimony, and such affidavit testimony can be considered to create genuine issues of material fact sufficient to defeat a motion for summary judgment." *Ohio Farmers Ins. Co. v. Ohio School Facilities Comm.*, 10th Dist. No. 11AP-547, 2012-Ohio-951, ¶ 22, citing *Purcell v. Norris*, 10th Dist. No. 04AP-1281, 2006-Ohio-1473, ¶ 12. We find that appellant's affidavit does not contradict her prior testimony but, rather, merely explains and clarifies it, as such testimony was made in response to an ambiguous question and, therefore, unclear. In support of this conclusion, we note that appellant's answer regarding her knowledge in March 2013 was made directly after discussing her husband's noncooperation and that neither appellant nor her questioner specifically mentioned OPERS or knowledge of problems with the divorce decree. Thus, because appellant's affidavit merely clarifies her prior testimony, we find no inconsistency. *Purcell* at ¶ 13.

{¶ 19} Further, appellee's own exhibits in support of her motion for summary judgment contain a letter from the DOPO processing company requesting a release form signed by appellant's ex-husband dated March 14, 2013, and a letter sent by appellant to her ex-husband on March 25, 2014 informing him that he was "required to complete the

enclosed forms and return them to [OPERS]." (Appellant's Motion for Summary Judgment, Exhibit K.) These documents demonstrate only that appellant continued to seek her ex-husband's cooperation in March 2013. Thus, because it is reasonable to conclude that appellant's statements at the Civ.R. 60(B) hearing refer to her ex-husband's noncooperation, a separate consideration from an awareness of legal malpractice such as to trigger a cognitive event, we cannot find, under a light most favorable to appellant, that appellant should have discovered in March 2013 that her injury resulted from appellee's alleged actions.

{¶ 20} Although we recognize that appellant " 'need not have discovered all of the relevant facts necessary to file a claim in order to trigger the statute of limitations,' " nothing in the record establishes that a "noteworthy event * * * occurred that does or should alert a reasonable person that a questionable legal practice may have occurred" prior to April 17, 2013. *Bowman* at ¶ 12, quoting *Asente* at ¶ 11. Therefore, under the facts and circumstances of this case and "indulg[ing] every reasonable presumption and resolv[ing] all doubts in favor of giving, rather than denying, [appellant] an opportunity to litigate," we find that the cognizable event occurred no earlier than April 17, 2013. *Flagstar* at ¶ 7. Thus, the trial court erred in finding that the statute of limitations barred appellant's claim for legal malpractice.

{¶ 21} Accordingly, we sustain appellant's assignment of error.

### III. Disposition

{¶ 22} Having sustained appellant's assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court  for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed; cause remanded.*

SADLER, J., concurs.
BRUNNER, J., dissents.

BRUNNER, J., dissenting.

{¶ 1}   I respectfully dissent from the opinion of the majority.  I would affirm the trial court's decision, taking into account the fact that appellant is a licensed attorney in the state of Ohio.  When the domestic relations court denied her Civ.R. 60(B) motion on

March 12, 2014, appellant was on notice then and there that she had a problem. She is an attorney, and even though the area of the law involving OPERS payments may not be her primary area of legal expertise, she, like all other licensed attorneys in Ohio, is trained in research and, having been so trained, completed a particularized curriculum of legal education that at least prepared her to ask questions (holding a better understanding than the non-legal trained person) to "know what she does not know." She should have questioned and investigated further. Moreover, the statute of limitations for legal malpractice in Ohio, especially for an attorney plaintiff, is an answer readily obtainable by even a non-legal Internet "Google" search. It is this critical factor of her status as an attorney that leaves me unable to concur with the opinion of the majority.

{¶ 2} I would apply the ancient maxims to appellant's lack of diligence in pursuing her claim for legal malpractice and in failing to observe the corresponding statute of limitations: " 'Ignorantia facti excusat, ignorantia juris non excusat' (Ignorance of fact excuses, ignorance of the law does not excuse); and 'Volenti non fit injuria' (that to which a person assents is not esteemed in law an injury)." *Scott v. Ford*, 45 Or. 531, 535 (1904), quoting Broom, *Legal Maxims* 253, 268 (8th Ed.). Appellant sat on her rights in failing to act with diligence to protect them. Accordingly, I would affirm the judgment of the trial court, finding that recovery against appellee is barred by the statute of limitations. I would not judicially extend the statute of limitations, especially in the case of an attorney plaintiff for an action in legal malpractice.

_____