**[Cite as *Community Hosps. & Wellness Ctrs. v. State*, 2020-Ohio-401.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WILLIAMS COUNTY

Community Hospitals and Wellness
Centers, et al.

     Appellees

v.

The State of Ohio, et al

     Appellees

[James L. Butler, Jr.—Appellant]

and

Community Hospitals and Wellness
Centers, et al.

     Appellees

v.

The State of Ohio, et al

     Appellants

Court of Appeals No. WM-19-001

Trial Court No. 16 CI 128

Court of Appeals No. WM-19-002

Trial Court No. 16 CI 128

**<u>DECISION AND JUDGMENT</u>**

Decided:  February 7, 2020

* * * * *

Quintin F. Lindsmith, Victoria Flinn McCurdy and Michael A. Shaffer, for appellees.

Enrique Rivera-Cerezo, for appellant State Representative James L. Butler, Jr.

Dave Yost, Ohio Attorney General, and Henry G. Appel, Assistant Attorney General, for appellant Ohio Department of Medicaid.

Dave Yost, Ohio Attorney General, Renata Y. Staff and Halli Brownfield Watson, for appellant state of Ohio.

\* \* \* \* \*

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from the judgments of the Williams County Court of Common Pleas which denied the motion to intervene by non-party appellant, State Representative James L. Butler, Jr. (hereafter, "Butler") and granted the motion for partial summary judgment by the plaintiffs-appellees, Community Hospitals and Wellness Centers, Ohio Hospital Association, Ohio State Medical Association, Ohio Psychological Association, Ohio Physical Therapy Association, Ohio Chapter of the American Academy of Pediatrics, Ohio Chapter of the American College of Surgeons, Ohio Osteopathic Association, Academy of Medicine of Cleveland & Northern Ohio, Ohio Ophthalmologic Society, Ohio Gastroenterology Society, and Ohio Psychiatric Physicians Association. For the reasons set forth below, this court affirms the judgments of the trial court.

2.

{¶ 2} On December 22, 2016, as amended on January 18, 2017, appellees filed a complaint against defendants-appellants, the state of Ohio and Ohio Department of Medicaid, seeking five counts of relief:  Count I (claim for declaratory judgment that R.C. 5162.80 violates the one-subject and three-considerations rules of the Ohio Constitution), Count II (claim for declaratory judgment for violation of due process based on impossibility), Count III (claim for declaratory judgment for violation of due process on the grounds of vagueness), Count IV (claim for declaratory judgment for violation of due process on the grounds of vagueness and impossibility of rules), and Count V (claim for injunctive relief).  In summary, appellees alleged Amended Substitute House Bill No. 52 of Ohio's 131st General Assembly ("Am.Sub.H.B. No. 52") was originally introduced regarding the workers' compensation program and, as a result of last-minute and extensive amendments, R.C. 5162.80, an unrelated provision known as Ohio's Price Transparency Law, was inserted.  In the course of that legislative process to enact Am.Sub.H.B. No. 52, appellees alleged appellants violated the Ohio Constitution.

{¶ 3} Also on December 22, 2016, appellants agreed to refrain from any actions to implement R.C. 5162.80, and appellees agreed to not pursue attorney fees if they prevailed.  On that same day the trial court journalized its temporary restraining order reflecting the parties' agreement.  The trial court continuously extended the temporary restraining order throughout the pendency of the case with the agreement of the parties.

{¶ 4} On February 21, 2017, appellants filed a motion to dismiss alleging appellees lacked standing.  Then on August 29, 2017, appellees filed a motion for partial

3.

summary judgment on Counts I and V of their complaint.  Appellees argued they "are entitled to summary judgment in the form of a declaratory judgment that R.C. 5162.80 is unconstitutional, an order severing it from HB 52, and an order enjoining its enactment." Appellants opposed the motion, arguing, in part, Am.Sub.H.B. No. 52 is constitutional because its sole subject is "how medical care is paid for."

{¶ 5} Meanwhile on October 20, 2017, Butler filed a motion to intervene as an additional defendant and cross-claimant.  Appellees opposed Butler's motion, and appellants opposed Butler's motion where he "unnecessarily and incorrectly calls into question the AGO's litigation strategies and tactics in defending the Price Transparency Law," although appellants conceded Butler may "provide a unique perspective" as the law's author.  On December 21, 2017, the trial court denied Butler's motion.  Butler then sought reconsideration of the trial court's decision with his intent to file a writ of mandamus, which appellees opposed, and on January 24, 2018, the trial court denied Butler's motion.  Butler appealed the trial court's decisions, and on September 19, 2018, this court dismissed the appeal for lack of jurisdiction.

{¶ 6} After completion of discovery and a stay pending Butler's appeal, on February 13, 2019, the trial court denied appellants' motion to dismiss, granted appellees' motion for partial summary judgment, granted injunctive relief to appellees, and determined "This is a FINAL, APPEALABLE ORDER under R.C. 2505.02.  Pursuant to Ohio Civil Rule 54, this Court finds no just reason for delay."  (Emphasis sic.)

4.

**{¶ 7}** In response, Butler filed his appeal, designated case No. WM-19-001, setting forth three assignments of error:

I. The trial court erred by denying State Representative James L. Butler Jr.'s Motion to Intervene as [of] right under Civ.R. 24(A)(2).

II. The trial court erred by denying State Representative James L. Butler Jr.'s Motion to Intervene permissively under Civ.R. 24(B).

III. The trial court erred by granting Plaintiffs' Motion for Partial Summary Judgment.

**{¶ 8}** Appellants then filed their appeal, designated case No. WM-19-002, setting forth two assignments of error:

I. The trial court erred by finding a single subject violation where there were practical and rational reasons to include a provision mandating medical providers to disclose their prices in a bill that funded the Bureau of Workers' Compensation, an agency that administers and pays for healthcare.

II. The trial court erred in finding that an amendment to a bill funding and regulating the Bureau of Workers' Compensation that added a law intended to decrease health care costs is a vital alteration of the bill, thereby requiring three new considerations.

**{¶ 9}** Appellees also filed pursuant to R.C. 2505.22 two cross-assignments of error to Butler's appeal:

5.

I.  The trial court erred when it found that State Representative Butler had timely moved to intervene ten months after suit was filed, ten months after he publicly raised issues which were later the subject of his attempted intervention, and where he essentially sought to start a new lawsuit against the Director of the Department of Medicaid after all discovery was completed and dispositive motion briefing was done.

II.  The trial court erred by finding that Butler had a cognizable interest, because the issue of statutory "nullification" was not before the trial court and counsel appointed by the Attorney General were already "zealously" defending the statute at issue.

{¶ 10} On May 3, 2019, this court ordered the consolidation of case Nos. WM-19-001 and WM-19-002.

## I.  Intervention

### A.  Standard of Review

{¶ 11} Appellate review of a trial court's decision on a motion to intervene is for an abuse of discretion, regardless of whether the Civ.R. 24 intervention sought was as of right or by permission.  *State ex rel. Merrill v. Ohio Dept. of Nat. Resources*, 130 Ohio St.3d 30, 2011-Ohio-4612, 955 N.E.2d 935, ¶ 41.  Abuse of discretion "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450

6.

N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

{¶ 12} "We construe Civ.R. 24 liberally to permit intervention." *Merrill* at ¶ 41. Nevertheless, we will not reverse the trial court's findings of fact absent an abuse of discretion, nor will we make a finding of fact the trial court should have made nor extract a finding where no such finding was made. *In re Guardianship of Rudy*, 65 Ohio St.3d 394, 396, 604 N.E.2d 736 (1992).

### B.  Intervention as of Right

{¶ 13} Intervention as of right is pursuant to Civ.R. 24(A)(2), which states:

> Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

{¶ 14} In support of his first assignment of error, Butler argues he has a right to intervene because he is the Ohio legislator who authored R.C. 5162.80 contained in the duly enacted Am.Sub.H.B. No. 52.  Although Governor Kasich signed into law Am.Sub.H.B. No. 52, Butler argues "this lawsuit is just part of [appellants'] prior coordination with [appellees] to nullify [R.C. 5162.80] before it was scheduled to take effect on January 1, 2017" by "not recommending or drafting rules by July 1, 2016,

7.

supporting [appellees] in their uncompromising position at every interested party meeting, coordinating with [appellees] in the filing of the present lawsuit, and, eventually, proposing an outright repeal of [R.C. 5162.80] in the 2017 state budget." Butler further alleges the attorneys for appellants, the Ohio Attorney General, have conflicts of interest that prevent them from zealously defending the duly enacted statute. Appellants and appellees argue in response the trial court did not abuse its discretion.

{¶ 15} This court has determined a successful applicant for intervention must prevail on each of four elements, *Houtz v. Houtz*, 6th Dist. Huron No. H-17-007, 2018-Ohio-1738, 111 N.E.3d 888, ¶ 21:

> In order to intervene under Civ.R. 24(A)(2) the motion must be (1) timely, and the following factors must be shown: (2) the intervenor's interest relates to the subject of the action, (3) the disposition of the action will, as a practical matter, impair or impede the intervenor's ability to protect its interest, and (4) the intervenor must demonstrate that its interest is not adequately represented by the existing parties.

*Id.* at ¶ 20.

### a. Timeliness

{¶ 16} In support of their first cross-assignment of error, appellees argue the trial court abused its discretion when it found, "In the present case, there is no question that Rep. Butler timely filed his motion to intervene." Appellees argue Butler's ten-month delay from when the lawsuit was filed was untimely because "Representative Butler had

known about this lawsuit since the time it was filed. Yet he did not seek to intervene until after Plaintiffs-Appellees filed a dispositive motion." Appellees further argue Butler's intervention essentially sought to start a new lawsuit against the Director of the Department of Medicaid after all discovery was completed and dispositive motion briefing was done. Neither Butler nor appellants responded to appellees' first cross-assignment of error.

{¶ 17} We review a trial court's decision on the timeliness of a motion to intervene for an abuse of discretion. *State ex rel. First New Shiloh Baptist Church v. Meagher*, 82 Ohio St.3d 501, 503, 696 N.E.2d 1058 (1998). Timeliness is determined on the facts and circumstances of the case and upon consideration of the following factors:

> "(1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention."

*Id.*, quoting *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir.1984).

{¶ 18} The record shows that Butler filed his motion to intervene on October 20, 2017, which was ten months after appellees filed their original complaint, eight months

after appellants filed their motion to dismiss, and one month after appellees' motion for partial summary judgment was decisional. Butler's purpose for intervening was to defend R.C. 5162.80, assert his right to file a writ of mandamus to compel rulemaking, and to claim appellants and their attorneys from the Ohio Attorney General's office have no interest in defending R.C. 5162.80. Butler admits he was very aware during November and December of 2016 of appellants' and appellees' joint "[push] for the legislature to delay the Price Transparency Law's effective date for six months, but they were unsuccessful." Then, he admits, "A little over a week before the law was due to take effect, on December 22, 2016, [appellees] filed the underlying lawsuit and through an Agreed Temporary Restraining Order between the parties, judicially received the very six-month extension [they] failed to get legislatively." By the time Butler filed his motion to intervene, discovery had ended, and two dispositive motions were decisional before the trial court. Butler's motion to intervene, its denial, his motion for reconsideration, that denial, and his first appeal, delayed the underlying litigation for the parties until this court's September 19, 2018 dismissal of his appeal, an additional 11 months.

{¶ 19} We find Butler's motion to intervene was untimely in light of the dispositive motions pending before the trial court, his awareness of attempts to delay the implementation of R.C. 5162.80, including this litigation, the lack of unusual circumstances in the record, and the prejudice to the original parties by the additional delays to a final resolution posed by his intervention attempts. For all of the foregoing

reasons, we find the trial court abused its discretion when it unreasonably and arbitrarily found Butler's motion to intervene as of right was timely.

{¶ 20} Appellees' first cross-assignment of error is well-taken.

### b. Legally Protectable Interest

{¶ 21} In support of their second cross-assignment of error, appellees argue the trial court erred by finding that Butler had a "cognizable interest." Appellees argue, "There * * * is no right of individual members of the Ohio General Assembly to intervene to defend laws they have sponsored or supported." Appellees further argue where there is no question that R.C. 5162.80 was enacted as part of Am.Sub.H.B. No. 52, Butler's claims of "nullification" by the lack of rulemaking is without merit. Neither Butler nor appellants specifically responded to appellees' second cross-assignment of error.

{¶ 22} To satisfy the second element of intervention, Butler's interest must be "'legally protectable,' i.e., protected by law." *Rumpke Sanit. Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 14.

{¶ 23} We find the trial court abused its discretion when it found Butler satisfied the second element, stating he "possesses an interest in the 'transaction' (litigating whether healthcare transparency statute is a constitutionally valid law)." Butler urges this court to find he has standing for a "legally protectable" interest on the authority of the holding in *State ex rel. Ohio Gen. Assembly v. Brunner*, 114 Ohio St.3d 386, 2007-Ohio-3780, 872 N.E.2d 912, ¶ 17, *amended on other grounds,* 115 Ohio St.3d 103,

2007-Ohio-4460, 873 N.E.2d 1232, where the Ohio Supreme Court stated "legislators at times have standing to challenge executive decisions" via mandamus actions. However, we find the Ohio Supreme Court did not extend this pronouncement to constitutional challenges on the issue before us: the conduct of the Ohio General Assembly, not the executive branch, in the process of enacting legislation. *Id.* at ¶ 18-19. Butler's reliance on *Brunner* is misplaced, and we find he does not have a "legally protected interest" as an individual member of the Ohio House to support the constitutionality of Am.Sub.H.B. No. 52 containing R.C. 5162.80, which was passed by both chambers of the Ohio General Assembly, signed by the governor, and became effective on June 30, 2015. *See Rumpke* at ¶ 21.

{¶ 24} For all of the foregoing reasons, we find the trial court abused its discretion when it unreasonably and arbitrarily found Butler had a legally protected interest to justify intervention as of right.

{¶ 25} Appellees' second cross-assignment of error is well-taken.

### c. Impediment and Adequate Representation

{¶ 26} Given our determinations on the first and second elements of intervention, Butler's motion to intervene fails, and it is unnecessary for us to review the third and fourth elements: impediment and adequate representation. We will not disturb the trial court's findings that whatever Butler's interests may be, they are not impeded and are adequately represented by appellants and their attorneys.

12.

{¶ 27} We reviewed the record and find the trial court did not abuse its discretion, and the trial court's attitude was not unreasonable, arbitrary or unconscionable, when it denied Butler's motion to intervene as of right.

{¶ 28} Butler's first assignment of error is not well-taken.

### d. Permissive Intervention

{¶ 29} Intervention by permission is pursuant to Civ.R. 24(B), which states:

Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of this state confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

{¶ 30} In its December 21, 2017 judgment entry, the trial court stated:

Rep. Butler also seeks permissive intervention in this lawsuit. Pursuant to Civ.R. 24(B), the Court must consider whether the intervention will "unduly delay or prejudice the adjudication of the rights of the original parties" and whether the "applicant's claim or defense and the main action have a question of law or fact in common." Based upon all of the above considerations, this Court likewise denies Rep. Butler's request for permissive intervention under Civ.R. 24(B).

13.

{¶ 31} In support of his second assignment of error, Butler argues the trial court abused its discretion when it denied his motion to intervene permissively pursuant to Civ.R. 24(B)(2) with no analysis. Butler argues his intervention raises common questions of law and fact with appellants and will not unduly delay or prejudice the adjudication of the rights of the original parties if he is allowed to file a complaint for a writ of mandamus to compel rulemaking against one appellant, the Director of Medicaid.

{¶ 32} In response, both appellants and appellees argue that the trial court did not abuse its discretion, although appellants "do not object if Representative Butler is permitted to permissively intervene in this matter."

{¶ 33} Butler does not point to any statute that confers on him a conditional right to intervene, so Civ.R. 24(B)(1) does not apply.

{¶ 34} Butler seeks intervention as an additional defendant in order to oppose appellees' motion for partial summary judgment. To succeed, Butler must show he has a common question of law or fact with appellants regarding the constitutionality of the enactment of Am.Sub.H.B. No. 52 with R.C. 5162.80 attached. The record shows Butler originally introduced Ohio's Price Transparency Law in the Ohio House, not as R.C. 5162.80 attached to "the Bureau of Workers' Compensation Budget, House Bill 52," but as R.C. 4743.08 attached to "the Operating Budget, House Bill 64." That fact of the simple transfer of Ohio's Price Transparency Law between bills of different subjects, even if deemed genuine and material, does not support the one-subject rule or any position opposing appellees' motion for partial summary judgment.

14.

{¶ 35} Nor do we find Butler's individual expressions of constitutional intent behind R.C. 5162.80 to raise genuine issues of material fact pursuant to Civ.R. 56. Butler's intent is not dispositive on the intent of the entire Ohio General Assembly when it enacted Am.Sub.H.B. No. 52 with R.C. 5162.80 attached. *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, ¶ 41.

{¶ 36} Butler's further claim that he should be permitted to intervene because his "[m]andamus action and this present case have common questions of law and fact" is also without merit. This court previously determined, "We find that Butler is able to file an action in mandamus, an original action, without intervention in the instant litigation." *Community Hosps. & Wellness Ctrs. v. State*, 6th Dist. No. WM-18-001 (Sept. 19, 2018). Although Butler has not yet done so, if he proceeded to file a writ of mandamus to compel the Director of Medicaid to draft regulations pursuant to R.C. 5162.80, he would merely duplicate the request for a court to determine, as a preliminary matter, the constitutionality of Am.Sub.H.B. No. 52 with R.C. 5162.80 attached. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 507, 715 N.E.2d 1062 (1999).

{¶ 37} Even if there were commonality of law or fact, Butler's intervention is still not guaranteed. "In exercising its discretion, the court 'shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *State ex rel. Greene Cty. Bd. of Commrs. v. O'Diam*, 156 Ohio St.3d 458, 2019-Ohio-1676, 129 N.E.3d 393, ¶ 10.

15.

{¶ 38} Butler concedes that "the parties have already fully briefed the issues." He does not add any new genuine issue of material fact for summary judgment consideration. Butler duplicates appellants' arguments opposing summary judgment by arguing Am.Sub.H.B. No. 52 was a budget appropriation bill for the Bureau of Workers' Compensation ("BWC"), and the inclusion of R.C. 5162.80 furthered that budget purpose "to control government and overall healthcare costs by creating cost consciousness and free market competition." Appellants also argue R.C. 5162.80 "targeted the improvement of healthcare provision and medical cost savings." Appellants further argue another provision added to Am.Sub.H.B. No. 52 calling for a cost reduction study shows "the General Assembly's concern with healthcare cost." Like appellants, Butler argues Ohio's Price Transparency Law received the required three considerations in both the Ohio House and Senate. Like appellants, Butler argues adding R.C. 5162.80 did not "vitally alter" H.B. 52, even if it "heavily amended" the budget appropriation bill.

{¶ 39} Despite Butler's claim to the contrary that his intervention would promote the efficient and consistent resolution of all legal claims in one proceeding, we find that granting intervention at this point would unduly delay the adjudication of this litigation without the addition of any genuine issue of material fact for summary judgment purposes. *Id.* at ¶ 14.

{¶ 40} We reviewed the record and find the trial court did not abuse its discretion, and the trial court's attitude was not unreasonable, arbitrary or unconscionable, when it denied Butler's motion to permissively intervene.

16.

**{¶ 41}** Butler's second assignment of error is not well-taken.

### e. Intervenor Opposing Summary Judgment

**{¶ 42}** "A nonparty who seeks intervention under Civ.R. 24 and is denied intervention may appeal only the issue of intervention." *State ex rel. N.G. v. Cuyahoga Cty. Court of Common Pleas, Juvenile Div.*, 147 Ohio St.3d 432, 2016-Ohio-1519, 67 N.E.3d 728, ¶ 28, citing *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 121 Ohio St.3d 507, 2009-Ohio-1523, 905 N.E.2d 1192, ¶ 18.

**{¶ 43}** We find Butler's third assignment of error impermissibly moves past the issue of intervention to oppose the trial court's summary judgment decision. We further find Butler repeats support of appellants' merit arguments to oppose appellees' motion for partial summary judgment.

**{¶ 44}** Butler's third assignment of error is not well-taken.

### II. Summary Judgment

### A. Standard of Review

**{¶ 45}** The trial court's granting partial summary judgment in favor of appellees was a final appealable order. *Gen. Acc. Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d 17, 21-23, 540 N.E.2d 266 (1989) (declaratory judgment actions are special proceedings within the context of R.C. 2505.02, and Civ.R. 54(B) is satisfied with the express statement of "no just reason for delay"); *Whitaker-Merrell Co. v. Geupel Const. Co.*, 29 Ohio St.2d 184, 280 N.E.2d 922 (1972), syllabus. We review de novo the trial court's summary judgment determination, employing the same Civ.R. 56 standard as trial courts.

17.

*Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

{¶ 46} Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * [and] that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 47} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R.

18.

56(E). *Id.* A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id.*

### B. One-Subject Rule

{¶ 48} The Ohio Constitution contains the following provision: "No bill shall contain more than one subject, which shall be clearly expressed in its title." Ohio Constitution, Article II, Section 15(D).

{¶ 49} In its February 13, 2019 judgment entry, the trial court granted appellees' motion for partial summary judgment on Count Nos. I and V. In reaching its decision, the trial court made its findings after having received and reviewed "the history of the price transparency law from the perspective of [appellees], [appellants] and the sponsor of the legislation, Representative James Butler." The trial court determined "that the portions of House Bill 52, as amended and which added the cost transparency statute (R.C. 5162.80) is unconstitutional and the provision adding R.C. 5162.80 must be severed, leaving as valid, the remaining provisions of House Bill 52 (which made various changes to Ohio's Workers' Compensation laws)." The trial court concluded, appellants "are permanently enjoined from enforcing that portion of House Bill 52 which added the price transparency act (R.C. 5162.80)."

{¶ 50} In support of its first assignment of error, appellants argue courts should adopt their broad view of the legislation's subject: "the way care is paid for and provided in Ohio." Appellants argue, "H.B. 52 reflects legislative efforts to regulate, fund, and reduce the cost of healthcare across the state. * * * To further address the objective of

19.

reducing healthcare costs, which H.B. 52 directly funds through its appropriation to the Bureau, H.B. 52 was amended to include R.C. 5162.80."

{¶ 51} In response, appellees argue R.C. 5162.80 "has nothing to do with the funding and operations of the Bureau of Workers' Compensation. It has nothing to do with reimbursement rates the BWC pays healthcare providers. It has nothing to do with how injured workers receive benefits under the Workers' Compensation system. It is a law that has no relationship to Workers' Compensation legislation, but vitally altered the substance of that legislation."

{¶ 52} "A statute cannot be enjoined unless it is unconstitutional. * * * The determination whether a statute or ordinance is constitutional is a question of law that we review de novo." *Cleveland v. State*, 157 Ohio St.3d 330, 2019-Ohio-3820, 136 N.E.3d 466, ¶ 15.

{¶ 53} Our de novo review ignores arguments relating to the policy or wisdom of R.C. 5162.80 and focuses on determining the constitutionality of Am.Sub.H.B. No. 52 with R.C. 5162.80 attached "as an exercise of legislative power." *Sorrell v. Thevenir*, 69 Ohio St.3d 415, 419, 633 N.E.2d 504 (1994), *overturned by legislative action on other grounds*, citing *State ex rel. Bishop v. Bd. of Ed. of Mt. Orab Village School Dist., Brown Cty.*, 139 Ohio St. 427, 438, 40 N.E.2d 913 (1942); *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212 (the court does not establish legislative policies or second-guess the General Assembly's policy choices).

20.

**{¶ 54}** The Ohio Supreme Court explains the purpose of the one-subject rule as follows:

> [T]he one-subject rule was added to our Constitution in 1851 as a means of placing "concrete limits on the power of the General Assembly to proceed however it saw fit in the enactment of legislation." Specifically, "[t]he primary and universally recognized purpose of [the one-subject rule] is to prevent logrolling -- * * * the practice of several minorities combining their several proposals as different provisions of a single bill and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately.'" The one-subject rule therefore is a constitutional limitation on the legislative power of the General Assembly. Thus, a constitutional challenge to an enactment of the General Assembly based on violation of the one-subject rule is a challenge to the authority of the General Assembly to enact the bill, not a challenge to the underlying statutory provisions of the bill. (Citations omitted.)

*Rumpke*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, at ¶ 20.

**{¶ 55}** "It is difficult to prove that a statute is unconstitutional. All statutes have a strong presumption of constitutionality." *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25, citing *Sorrell* at 418-419. "[B]efore a court may declare it unconstitutional it must appear beyond a reasonable doubt that the

21.

legislation and constitutional provisions are clearly incompatible." *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. "A manifestly gross and fraudulent violation of the one-subject provision contained in Section 15(D), Article II of the Ohio Constitution will cause an enactment to be invalidated." *In re Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, paragraph one of the syllabus, citing *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 464 N.E.2d 153 (1984), syllabus, *modified on other grounds*. The burden of proof is on the party challenging the constitutionality of a law. *Cleveland*, 157 Ohio St.3d 330, 2019-Ohio-3820, at ¶ 15.

{¶ 56} Logrolling is evidenced by unnatural combinations of provisions in a single bill so that legislators "may consolidate votes and pass provisions that may not have been acceptable to a majority on their own merits." *Groch* at ¶ 202. The one-subject rule violation can be found where "'the best explanation for the unnatural combination is a tactical one -- logrolling. In other words, the one-subject provision does not require evidence of fraud or logrolling beyond the unnatural combinations themselves." (Citation omitted.) *Nowak* at ¶ 71. "[W]here there is a blatant disunity between topics and no rational reason for their combination can be discerned, it may be inferred that the bill is a result of log-rolling." *Hoover v. Bd. of Cty. Commrs., Franklin Cty.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985).

{¶ 57} "The one-subject rule does not prohibit a plurality of topics, only a disunity of subjects." *State ex rel. Ohio Civ. Serv. Emps. Assn. v. State*, 146 Ohio St.3d 315,

22.

2016-Ohio-478, 56 N.E.3d 913, ¶ 17. There is no disunity of subjects if multiple topics are germane to one subject and brought together "not * * * for purposes of logrolling but for the purposes of bringing greater order and cohesion to the law or of coordinating an improvement of the law's substance." *Id.*, quoting *Dix* at 145.

{¶ 58} "[I]dentification of a bill's subject is a question of law, which depends 'upon the particular language and subject matter of the proposal.' No fact-finding is necessary." (Citation omitted.) *Id.* at ¶ 21. Determining a bill's subject and the connection of topics can be understood as points along a spectrum.

> At one end, closely related topics unite under a narrowly denominated subject. As the topics embraced in a single act become more diverse, and as their connection to each other becomes more attenuated, so the statement of subject necessary to comprehend them broadens and expands. There comes a point past which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such. It becomes a ruse by which to connect blatantly unrelated topics. At the farthest end of this spectrum lies the single enactment which endeavors to legislate on all matters under the heading of "law."

*Sheward*, 86 Ohio St.3d at 499, 715 N.E.2d 1062.

{¶ 59} The one-subject rule is mandatory. *Ohio Civ. Serv. Emps. Assn.* at ¶ 16, citing *Nowak*, 104 Ohio St.3d 466, 2004-Ohio-6777, 820 N.E.2d 335, at ¶ 54. Courts must not abdicate their duty to enforce the Ohio Constitution. *State ex rel. Ohio*

*AFL-CIO v. Voinovich*, 69 Ohio St.3d 225, 229, 631 N.E.2d 582 (1994). If a court finds a violation of the one-subject rule, the remedy is to sever the defective portions and save the remainder after a determination of "which subject is primary and which subject is an unrelated add-on. The former is then saved by severing the latter." *Sheward* at 500. The test for severance asks three questions:

"(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?"

*Cleveland*, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, at ¶ 19, quoting *Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927). "[O]nly in the rare instance when we have been unable to discern a primary subject have we resorted to invalidating an entire bill." *Ohio Civ. Serv. Emps. Assn.* at ¶ 22.

{¶ 60} We reviewed de novo the journals of the Ohio House and Senate and find that as introduced in the Ohio House on February 10, 2015, H.B. No. 52 proposed to amend R.C. 119.12, 4121.129, 4121.37, 4121.61, 4121.65, 4121.66, 4121.67, 4121.68, 4123.01, 4123.291, 4123.34, 4123.343, 4123.35, 4123.351, 4123.411, 4123.419, 4123.512, 4123.56, and 4123.59, and repeal R.C. 4121.48 "to make changes to the

24.

Workers' Compensation Law, to make appropriations for the Bureau of Workers' Compensation for the biennium beginning July 1, 2015, and ending June 30, 2017, and to provide authorization and conditions for the operation of the Bureau's programs." By the time the House passed the bill on March 11, 2015, it was amended to add more sponsor names to the title. Therefore, when the House passed Am. H.B. No. 52, the substance of the bill's title remained identical as introduced.

{¶ 61} Then when the Ohio Senate passed Sub.H.B. No. 52 on June 25, 2015, the substance of the bill's title remained identical as passed by the House on March 11, 2015, with the substitution being the Senate's addition to add more sponsor names to the title and to mandate the BWC Administrator conduct a cost reduction study and report the results to both chambers of the General Assembly.

{¶ 62} The Senate journal shows that upon reconsideration of its passage, the Senate amended the bill later on June 25, 2015, to specifically insert enacting R.C. 5126.80 in the bill's title and in the substance of the bill's content, where the inserted portions made no reference to BWC operations or budget. Therefore, when the Senate passed Am.Sub.H.B. No. 52 later on June 25, 2015, the bill's title read:

> To amend sections 119.12, 4121.129, 4121.37, 4121.61,4121.65, 4121.66, 4121.67, 4121.68, 4123.01,4123.291, 4123.34, 4123.343, 4123.35, 4123.351, 4123.411, 4123.419, 4123.512, 4123.56, and 4123.59, *to enact section 5162.80*, and to repeal section 4121.48 of the Revised Code to make changes to the Workers' Compensation Law, to make

appropriations for the Bureau of Workers' Compensation for the biennium beginning July 1, 2015, and ending June 30, 2017, and to provide authorization and conditions for the operation of the Bureau's programs.

(Emphasis added.)

When the House concurred on June 26, 2015, with the Senate's eventual passage of Am.Sub.H.B. No. 52, the bill's title was no longer identical to the bill's title when introduced or as originally passed by both chambers of the Ohio General Assembly.

{¶ 63} As a matter of law we find the primary subject of Am.Sub.H.B. No. 52 is broadly regarding BWC operations and budget considerations for the period of July 1, 2015 to June 30, 2017. Although Ohio's Price Transparency Law is a relatively small portion of Am.Sub.H.B. No. 52, as a matter of law we find the broad subject of R.C. 5162.80 is to permanently impose, effective on January 1, 2017, requirements to prepare good-faith written cost estimates on products, services, or procedures by "a provider of medical services," and the BWC is not "a provider of medical services" pursuant to R.C. 5162.80(A). We further find R.C. 5162.80 is unnaturally combined with BWC operations and budget considerations and is an unrelated add-on to Am.Sub.H.B. No. 52, where the best explanation for the unnatural combination is logrolling. Pursuant to Section 8 of Am.Sub.H.B. No. 52, any invalid provision of the law is severable.

{¶ 64} On de novo review, we find beyond a reasonable doubt that Am.Sub.H.B. No. 52 violates the one-subject rule contained in Ohio Constitution, Article II, Section 15(D) with regard to the addition of R.C. 5162.80 and is, therefore, unconstitutional, in

26.

part.  Because we find a disunity of subjects between Am.Sub.H.B. No. 52 and R.C. 5162.80, we affirm the judgment of the trial court severing R.C. 5162.80 from Am.Sub.H.B. No. 52 and saving the non-offending provisions of Am.Sub.H.B. No. 52 for its primary subject.

{¶ 65} Appellant's first assignment of error is not well-taken.

### III.  Three-Considerations Rule

{¶ 66} The Ohio Constitution contains the following provision:  "Every bill shall be considered by each house on three different days, unless two-thirds of the members elected to the house in which it is pending suspend the requirement, and every individual consideration of a bill or action suspending the requirement shall be recorded in the journal of the respective house."  Ohio Constitution, Article II, Section 15(C).  This rule is also known as the three-readings rule.

{¶ 67} In its February 13, 2019 judgment entry, the trial court found, "Each chamber of the General Assembly satisfied the three-reading rule prior to the amendment adding the terms of R.C. 5162.80. (Emphasis sic.)"  Without evidence in the record of the two-thirds vote required to suspend the three-considerations rule, the trial court found that adding R.C. 5162.80 to Am.Sub.H.B. No. 52 "did, in fact, vitally alter the substance of the original bill.  Nowhere in the original bill was there any discussion regarding cost transparency.  The original bill dealt only with the issues focused solely on Ohio Workers' Compensation law and budgetary issues."  The trial court found the

27.

three-considerations rule was violated, and appellees were entitled to partial summary judgment.

{¶ 68} In support of their second assignment of error, appellants argue the trial court erred by engaging in judicial overreach. Appellants argue "the addition of the Price Transparency Law did not change the single-subject of the bill and certainly did not vitally alter its common purpose so as to require each chamber of the General Assembly to consider the bill three more times."

{¶ 69} In response, appellees argue the trial court did not err to prevent "the type of legislative gamesmanship that the three-considerations rule was designed to guard against." Appellees argue R.C. 5162.80 was not included when "H.B. 52" was originally passed by both the Ohio House and Senate. Appellees argue that soon after passing "H.B. 52," the "Senate literally considered and passed the Price Transparency Law at the same time," and the next day the "House introduced, read, and passed the Price Transparency Law in less than three minutes." Appellees further argue, "The Price Transparency Law literally went from non-existent to enacted Ohio law within the span of one day," even though it vitally altered "legislation that had been solely devoted to the budget and operations of the Workers' Compensation system."

{¶ 70} The Ohio Constitution is violated if the legislative journal does not reflect the required "three considerations in each house of the bill in the form in which it was eventually enacted." *Hoover*, 19 Ohio St.3d at 5, 482 N.E.2d 575. "[A]mendments

28.

which do not vitally alter the substance of a bill do not trigger a requirement for three considerations anew of such amended bill." *Id.*

In 1973 the Ohio Constitution was amended and the language "and every individual consideration of a bill or action suspending the requirement shall be recorded in the journal of the respective house" was added to the original three-consideration provision. "Thus, by constitutional mandate, there now exists an inherently reliable immediate source by which the legislature's compliance may be readily ascertained without any undue judicial interference." (Citation omission.)

*Ohio AFL-CIO*, 69 Ohio St.3d at 231-232, 631 N.E.2d 582. "Thus, as a result of *Hoover* the three-consideration language of Section 15(C), Article II is no longer directory but is instead mandatory." *Id.* at 232. "We therefore hold that a legislative Act is valid if the requisite entries are made in the legislative journals and there is no indication that the *subject matter of the original bill was "vitally altered"* such that there is no longer a common purpose or relationship between the original bill and the bill as amended." (Emphasis sic.) *Id.* at 233.

{¶ 71} We reviewed de novo the Ohio House and Senate journals and find beyond a reasonable doubt that Am.Sub.H.B. No. 52 violates the three-considerations rule contained in Ohio Constitution, Article II, Section 15(C) with regard to the vital alteration by the addition of R.C. 5162.80 and is, therefore, unconstitutional, in part. We find H.B. No. 52 received its first consideration in the House on February 10, 2015, its

29.

second consideration on February 11, 2015, and its third consideration on March 11, 2015, when the House passed the bill as Am.H.B. No. 52 and did not include R.C. 5162.80. We further find Am.H.B. No. 52 received its first consideration in the Senate on March 16, 2015, its second consideration on March 17, 2015, and its third consideration on June 25, 2015, when the Senate passed the bill as Sub.H.B. No. 52 and did not include R.C. 5162.80. When the Senate then, on reconsideration, inserted R.C. 5162.80, we find Am.Sub.H.B. No. 52 was vitally altered. The vitally altered Am.Sub.H.B. No. 52, now with R.C. 5162.80, received at most one consideration in the Senate on June 25, 2015 prior to its passage that day. When the House concurred with the Senate's passage of Am.Sub.H.B. No. 52 on June 26, 2015, the bill at most received one consideration in the House that day. Because we find a violation of Ohio Constitution, Article II, Section 15(C), we affirm the judgment of the trial court severing R.C. 5162.80 from Am.Sub.H.B. No. 52 and saving the non-offending provisions of Am.Sub.H.B. No. 52.

{¶ 72} Appellants' second assignment of error is not well-taken.

{¶ 73} On consideration whereof, the judgments of the Williams County Court of Common Pleas are affirmed. Appellants and Butler are jointly ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.