[Cite as *Liber v. Westmeyer*, 2025-Ohio-1099.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

David Liber

    Appellant

v.

Joseph W. Westmeyer, Jr. et al.

    Appellees

Court of Appeals No.  L-24-1076

Trial Court No.  CI0202203005

**DECISION AND JUDGMENT**

Decided:  March 28, 2025

* * * * *

Daryl K. Rubin, for appellant.

Russell W. Porritt, Andrew J. Stough, and
Joseph W. Westmeyer, III, for appellees.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, David Liber, from the judgment of the Lucas County Court of Common Pleas, journalized on March 26, 2024, which granted summary judgment to appellees, Joseph W. Westmeyer III and Westmeyer Law Offices.  For the reasons that follow, we affirm.

## Assignments of Error

### FIRST ASSIGNMENT OF ERROR

The trial court erred in granting Defendants-Appellees' Joseph Westmeyer, III's … and Westmeyer Law Offices' Motion for Summary Judgment by finding Plaintiff-Appellant David Liber's legal malpractice claim barred under the one year statute of limitations, where Plaintiff-Appellant Liber provided credible evidence that he did not believe the claim existed earlier than February 2023, and filed the claim in May 2023.

### SECOND ASSIGNMENT OF ERROR

The trial court erred in granting Appellees Westmeyer, III and The Westmeyer Law Offices [sic] motion for summary judgment against Mr. Liber's breach of contract / promissory note claim, where Plaintiff-Appellant Liber provided credible evidence that Defendants-Appellees Westmeyer, Jr. and Westmeyer, III: 1.) operated The Westmeyer Law Offices as purported partners; 2.) represented themselves to the public and their clients as a partnership; and, therefore 3.) Defendants-Appellants Westmeyer, III and The Westmeyer Law Offices may be held liable for breach of the promissory note.

## Background

{¶ 2} On November 25, 2015, Liber and Joseph W. Westmeyer, Jr. (Westmeyer III's father) (hereinafter "Westmeyer Jr.") signed a promissory note whereby Westmeyer Jr. agreed to pay Liber $165,000 at five percent interest plus an additional amount toward legal fees, all of which would become due "within one year or sooner, based upon the settlement of the Lincoln School case in the Lucas County Common Pleas Court Case No. CI-2015-02965."  The promissory note also contained the following relevant language: "This loan is secured by the accounts receivable of Westmeyer Law which is a sole proprietorship owned by Joseph W. Westmeyer, Jr."

2.

{¶ 3} On July 11, 2022, Liber filed a complaint against Westmeyer Jr. alleging that the Lincoln School case settled on November 17, 2016, that the promissory note therefore became due and payable on November 17, 2017, and that Westmeyer Jr. failed to repay the loan.

{¶ 4} On May 18, 2023, with leave of court, Liber filed an amended complaint, which included claims against Joseph W. Westmeyer, III (hereinafter "Westmeyer III") and Westmeyer Law Offices (hereinafter "WLO") in Count II. Liber alleged that he was represented by Westmeyer Jr., who identified himself as WLO, and that WLO was an unincorporated association for profit, consisting of two members – Westmeyer Jr. and Westmeyer III. Liber further alleged that both Westmeyers were attorneys of record in the Lincoln School case, and he believed that he was loaning the money to both Westmeyers and WLO. Because both Westmeyers did business as WLO and had represented Liber in various capacities up to 2022, he did not make any distinction between the two Westmeyers and attributed any statement made by Westmeyer Jr. to be binding on all of the defendants as he was never informed that they were acting independently.

{¶ 5} Liber further stated that both Westmeyers continued to represent Liber up to 2022, and specifically Westmeyer III represented Liber in probate court regarding the death of Liber's wife through February 11, 2022. In addition to claims regarding repayment of the promissory note, which Liber maintained was the obligation of all three defendants, Liber claimed that Westmeyer III notarized a power of attorney (POA) signed by Westmeyer Jr. on September 16, 2019, authorizing Westmeyer Jr.'s wife,

3.

Judith, to be his attorney-in-fact, and Liber believes this POA was used to defeat his interest in Westmeyer Jr.'s assets. Liber was unaware of the POA until it was produced in the underlying case on February 8, 2023, and he believes that Westmeyer III's involvement in the POA was an undisclosed conflict of interest. According to the amended complaint, two months after Liber filed his initial complaint, Judith sold a home in Bowling Green, Ohio in reliance upon the POA. Count II also alleged that the defendants failed to protect Liber's interests in a myriad of ways and thus breached their duty to Liber.

{¶ 6} Westmeyer Jr. passed away on December 26, 2023, and a suggestion of death was filed on February 7, 2024, requesting that all claims against Westmeyer Jr. be dismissed. A motion requesting Scott Saum, special administrator for Westmeyer Jr.'s estate, be substituted as party defendant, was filed, and was granted.

{¶ 7} On February 15, 2024, Westmeyer III and WLO filed their motion for summary judgment, arguing that the statute of limitation had lapsed regarding Liber's malpractice claim, there was no privity of contract between them and Liber, and they did not owe any fiduciary duties to Liber with respect to the promissory note. In support, they provided property records for a home sold by Westmeyer Jr.'s wife and affidavits from Westmeyer III and Samuel Wozniak, the accountant and tax preparer for Westmeyer Jr. from 1999 through March 1, 2017, and for Westmeyer III from March 1, 2017 through the present. In his affidavit, Westmeyer III stated that he was a W-2 employee of Westmeyer Jr. from 1999 through March 1, 2017, that he wasn't in a partnership with Westmeyer Jr., that he received wages, but not any percentage of the

4.

profits from Westmeyer Jr., and that he opened his business with a separate employee EIN and bank account on March 1, 2017. These statements were confirmed by Wozniak in his affidavit. Additionally, Westmeyer III stated in his affidavit that he was unaware of the loan until Liber inquired about payment in 2021, that he was not aware of the promissory note until early 2022, and that, to his knowledge, Westmeyer Jr. did not have any assets in his name when he retired and did not transfer or sell any assets after he retired. Lastly, Westmeyer III stated that he last represented Liber regarding his wife's estate, which closed on February 11, 2022.

{¶ 8} Liber countered, that (1) his claim for legal malpractice is not barred by the statute of limitations as he did not discover Westmeyer III's negligence until "on or about February 8, 2023" when "he learned of the Defendant Westmeyer III's hand in fraudulently conveying Defendant Westmeyer, Jr.'s assets, through an invalid Power of Attorney," (2) his breach of contract action was filed before the statute of limitations expired, (3) privity of contract with Westmeyer III was unnecessary with respect to Liber's claim under the promissory note as Westmeyer Jr. and Westmeyer III were partners in WLO and privity of contract with one partner in a partnership is sufficient to bind the others, and (4) the Westmeyers acted as purported partners. In support of his argument that a partnership existed, Liber relied upon *Komorowski v. John P. Hildebrand Co., L.P.A.*, 2015-Ohio-1295 (8th Dist.).

{¶ 9} Liber also provided his affidavit, and the affidavit of another client of the Westmeyers, Addie Turner. In addition to facts regarding the promissory note, Liber's affidavit stated that he believed Westmeyer Law and WLO were the same entity and that

5.

he was represented by both Westmeyers, who did not tell him they were not partners. He also stated that he did not learn about Westmeyer III's "malfeasance" until February 3, 2023[1] when he discovered the POA and how it was used to avoid paying him moneys due under the note. Turner also stated that she was represented by both Westmeyers and during that time she was led to believe they were partners and believed that she was being represented by them as partners.

{¶ 10} In their reply, Westmeyer III and WLO argued that: the terms of the promissory note were clear and unambiguous in that the promise to pay Liber was made by Westmeyer Jr. only, and that Westmeyer Law was a sole proprietorship and therefore extrinsic evidence was not admissible to hold Westmeyer III and WLO liable; Liber did not produce any evidence that the Westmeyers were partners when the promissory note was executed; they did not breach any duty to Liber, and that even if they had, the statute of limitations bars Liber's malpractice claims because their attorney-client relationship ended on February 11, 2022; and, the POA was not improper and thus its discovery could not be a cognizable event.

{¶ 11} The trial court granted summary judgment in favor of Westmeyer III and WLO.[2] With respect to Liber's legal malpractice claim, the trial court found it to be barred by the statute of limitations. The trial court determined that Westmeyer III and

---

[1] Liber's briefs refer to February 8, 2023, as the date of discovery; however, his affidavit states that he learned about Westmeyer III's "malfeasance" on or about February 3, 2023. This distinction is not material.

[2] In its judgment entry the trial court also struck a separate motion for summary judgment requested by Liber in his opposition regarding his claims against Westmeyer Jr., on the basis that it was filed out of time and without further leave of court.

6.

WLO met their initial burden of proof by establishing that Westmeyer III's attorney-client relationship with Liber terminated on February 11, 2022. The trial court then held that the burden of proof switched to Liber to create a question of fact as to when he discovered Westmeyer III's "alleged 'malfeasance'" and further found that Liber failed to do so, thus the statute of limitations ran on Liber's malpractice claim. The trial court found no competent evidence that the POA was used to avoid paying Liber money due to him, and the allegation in Liber's affidavit stating that he learned the POA was used to avoid paying him monies was not proper evidence but was instead merely conclusory.

{¶ 12} With respect to Liber's breach of the promissory note/breach of contract claim, the trial court noted that the promissory note was signed by Westmeyer Jr. "without any indication that it was being executed in a representative capacity," that Westmeyer III had demonstrated that he was not a partner with Westmeyer Jr., and that Liber had not presented any evidence that Westmeyer Jr. and Westmeyer III were implied partners. The trial court also found no evidence that WLO was a party to the promissory note, noting that such an argument contradicts the clear and unambiguous language in the promissory note.

{¶ 13} Liber appealed.

### Standard of Review

{¶ 14} "We review a summary judgment decision on a de novo basis. Thus, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment." (Citations omitted.). *DeFoe v. Schoen Builders*, LLC, 2019-Ohio-2255, ¶ 24 (6th Dist.).

7.

**Summary Judgment Standard**

{¶ 15} Under Civ.R. 56(C), summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party.

{¶ 16} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the moving party meets this initial burden, the nonmoving party must set forth specific facts, by way of proper Civ.R. 56(C) evidence, showing a genuine issue for trial exists. *Id*. at 293.

**First Assignment of Error**

{¶ 17} Liber contends that the trial court erred in finding his legal malpractice claim barred by the one-year statute of limitations.

{¶ 18} In *Henderson v. Mockensturm, Ltd.*, 2024-Ohio-6129, ¶ 29 (6th Dist.), this court set forth:

> "Actions that allege malpractice by an attorney must be commenced within one year after the cause of action accrues." An action for legal malpractice accrues and the statute of limitations begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or

undertaking terminates, whichever occurs later." A "cognizable event" is an event sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. (Citations omitted.)

{¶ 19} There is no dispute that the attorney-client relationship ended more than a year prior to Liber's complaint. The issue here is whether, within a year of filing suit, a cognizable event occurred whereby Liber discovered he was injured by Westmeyer III's act or non-act. Liber argues that he presented sufficient evidence that did not discover the malpractice until on or about February 8, 2023, when he was made aware of a POA that Westmeyer III assisted Westmeyer Jr. to execute, and that the POA was used "to avoid paying [him] monies due from the Promissory Note." Liber also argues Westmeyer III and WLO did not first meet their initial burden of presenting any evidence on this issue.

{¶ 20} We find that Westmeyer III and WLO did address both statute of limitation options in their briefs in support of their motion for summary judgment. They provided Westmeyer III's affidavit which stated that the last time he represented Liber in any capacity was February 11, 2022. Regarding when any alleged malpractice was, or should have been discovered, they argued that Westmeyer III's preparation of the POA, which Liber relies upon to extend the statute of limitations beyond the termination of the attorney-client relationship, was not improper and therefore could not have been a cognizable event which would have started the one-year clock for statute of limitation

9.

purposes. We find the affidavit evidence and applicable law is sufficient to meet their initial burden.[3]

{¶ 21} Liber next argues that he provided credible evidence as to when he discovered the malpractice. He cites to the POA, which he states was "allegedly executed on September 16, 2019," and "purported to declare [Westmeyer Jr.'s wife] to be his attorney-in-fact" and that it was notarized by Westmeyer III. He further claims that this POA was provided to him on February 8, 2023, as part of discovery in the underlying case, and it was this POA that gave him "a definite sense of a possible problem." According to his affidavit, when he became aware of the POA, he "also learned how that [p]ower of [a]ttorney was used to avoid paying me monies due from the promissory note." He did not elaborate on how it was used to avoid paying him money, only stating that "at no time did any Defendant notify [him] of any property disposed of through the [p]ower of [a]ttorney, or how that might impact my rights to collect on the Promissory Note." He also argues that the fact that he permitted Westmeyer III and WLO to represent him through February of 2022 "evinces that he did not discover the malpractice until after February 2022" and he argues that "there is credible evidence that

---

3 Considering the fact pattern of this case, we agree with the concurrence in *Getch v. Jeffrey T. Orndorff Co., L.P.A.*, 2013-Ohio-3973, ¶ 87-90 (11th Dist.), which stated that, in situations where, as here, the moving party contends he or she did not do anything improper, putting the burden on that party to identify the date of the cognizable event has the potential "to create an irreconcilable dilemma for the moving party," and thus, the moving party's burden should be satisfied when he or she argues there never was a cognizable event. The burden would then shift to the nonmovant to establish the date of the cognizable event.

10.

…Westmeyer III's actions helped delay when Mr. Liber became aware of the legal malpractice until *after* his representation ended." (Emphasis sic.)

{¶ 22} As Westmeyer III and WLO met their initial burden, Liber was required to respond with specific facts showing a genuine issue of material fact for trial. *Community Hosps. & Wellness Centers v. State*, 2020-Ohio-401, ¶ 47 (6th Dist.). We find that Liber did not present specific facts showing there to be a genuine issue of material fact that the discovery of the POA alerted him to any potential malpractice. While he makes the conclusory statement in his affidavit that he learned the POA was used to avoid paying him under the promissory note, he does not provide any evidence that assets were transferred or concealed through the use of the POA, or that Westmeyer III was aware of the promissory note when the POA was drafted. The only specific allegation made regarding the transfer of assets was made in the amended complaint - that Westmeyer Jr.'s wife sold a home two months after Liber filed his initial complaint against Westmeyer Jr., and that she did so in reliance upon the POA. However, Liber has provided no evidence in support of this allegation, and Westmeyer III and WLO provided real estate records from Wood County that show the property at issue was never owned by Westmeyer Jr., but rather was owned solely by his wife.[4] Similarly, the fact that he used Westmeyer III and WLO to represent him in his probate case, and the allegation that

---

[4]  Although this record was not properly before the trial court, Liber did not object to its admission, and thus, we will consider it. *See State ex rel. Gilmour Realty, Inc. v. Mayfield Hts.*, 2009-Ohio-2871, ¶ 17.

11.

Westmeyer III's actions resulted in a delay of Liber's discovery of malpractice, are not evidence of any specific cognizable event that occurred within a year of him filing suit.

{¶ 23} We additionally note that, based upon Liber's allegations of malpractice, it is possible that the statute of repose would bar the claim regardless of the discovery of the other conduct alleged. See R.C. 2305.117(B).

{¶ 24} Therefore, upon our review of the briefs, the record, and the applicable law, we agree with the trial court that Liber's malpractice claim is barred by the statute of limitations.[5]

## Second Assignment of Error

{¶ 25} Liber contends that the trial court erred in ruling that Westmeyer Jr. and Westmeyer III were not purported partners.[6] He argues that they were, and thus Westmeyer III and WLO are liable on the promissory note signed by Westmeyer Jr. In support of his claim of a purported partnership, he stated that both Westmeyer Jr. and Westmeyer III "used the name 'Westmeyer Law Offices' on their publicly accessible website as far back as 2011, and that same website described their firm as follows: "'The Westmeyers have built a family law firm known for its professionalism, aggressive representation, and client service.'" Liber pointed out that both Westmeyers signed official documents, including court filings, as attorneys for "Westmeyer Law Offices,"

---

[5] We note that the Ohio Supreme Court has stated that a law firm cannot commit legal malpractice directly and cannot be held vicariously liable for malpractice unless one of its principals or associates is liable. *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 2009-Ohio-3601, syllabus.

[6] As Liber's assignment of error is limited to whether Westmeyer Jr. and Westmeyer III were purported partners, we limit our partnership analysis to this issue.

12.

without designating themselves as either "associate" or "sole proprietor," and they shared office space and clients. He also cites to *Komorowski*, 2015-Ohio-1295 (8th Dist.) and *Est. of Dorothy Holmes v. Ludeman*, 2001 WL 1198638 (6th Dist. Oct. 5, 2001).

{¶ 26} Westmeyer III and WLO counter that the promissory note is a contract, which unambiguously states that Westmeyer Jr. was the person obligated to pay Liber, and that Westmeyer Law was a "sole proprietorship owned by Joseph W. Westmeyer, Jr.," not a partnership as alleged by Liber, and that as the contract is unambiguous, its interpretation is a matter of law, and the court cannot create a new contract by finding an intent not expressed by the parties in the contract. They also point to evidence that Westmeyer III was not in an actual partnership with Westmeyer Jr., and that Westmeyer III did not hold himself out as a partner of Westmeyer Jr.

{¶ 27} R.C. 1776.22 defines a partnership as "any association of two or more persons to carry on as co-owners a business for-profit …, whether or not the persons intend to form a partnership." While there are different ways in which a partnership can be created, Liber specifies that "the one relevant to this case is a 'purported' partner," citing to R.C. 1776.38(A), which reads as follows:

> If a person, by words or conduct, purports to be a partner, or consents to being represented by another as a partner, in a partnership or with one or more persons not partners, the purported partner is liable to any person to whom the representation is made if that person, relying on the representation, enters into a transaction with the actual or purported partnership. If the representation, either by the purported partner or by a person with the purported partner's consent, is made in a public manner, the purported partner is liable to a person who relies upon the purported partnership even if the purported partner is not aware of being held out as a partner to the claimant. If partnership liability results, the purported partner is liable with respect to that liability as if the purported partner were a

partner. If no partnership liability results, the purported partner is liable with respect to that liability jointly and severally with any other person consenting to the representation.

{¶ 28} For Westmeyer III to be liable as a purported partner under this statute, Westmeyer III must have represented himself to be Westmeyer Jr.'s partner "by words or conduct," or consented to another representing him as such, and Liber must have entered into the promissory note in reliance on those representations. *See Howick v. Lakewood Village Ltd. Partnership,* 2007-Ohio-4370, ¶ 55 (3rd Dist.), citing *Fiberized Prod., Inc. v. Crocker*, 1993 WL 120092 (10th Dist. April 15, 1993) (setting forth test for similar statute). However, we do not find that Liber has established a question of fact regarding whether Westmeyer III is a purported partner of Westmeyer Jr. as he has not provided any evidence regarding representations made by Westmeyer III, or made with his consent, that Liber would have relied upon when entering into the promissory note. While Liber's briefs reference statements in a webpage, he does not provide any evidence that he was aware of these statements at the time he entered into the promissory note. Additionally, in his affidavit, he makes the following relevant statements:

> 3. The Promissory Note stated that Joseph W. Westmeyer, Jr. was a member of Westmeyer Law. I always did, and continue to believe, that meant [WLO], as that is the firm I have always dealt with. At no point did Defendant Westmeyer, Jr. do or say anything to indicate otherwise. At no point did Defendant Westmeyer, Jr., indicate what "sole proprietorship" mean, or that it might mean something different from [WLO].
> …
> 6. At no time did any of the Defendants say or do anything which would indicate that they were operating as anything other than a partnership. This was always the case for all of my personal and professional interaction with them - both before and after the Promissory Note was executed.
> 7. Defendants always represented themselves to me together as The Westmeyer Law Offices, and themselves as members thereof. They never

14.

indicated in any way, that they were working for me in their individual capacities.

{¶ 29} We do not find these statements create a question of fact as to whether Liber loaned the money to Westmeyer Jr. based upon representations of a partnership with Westmeyer III upon which he relied. The promissory note was signed by Westmeyer Jr., without any reference to a partnership or even WLO, and it specifically stated that Westmeyer Law is "a sole proprietorship owned by Joseph W. Westmeyer, Jr." Moreover, R.C. 1776.38 requires words or conduct. We do not find Westmeyer III's silence to be sufficient, when there is no evidence that he was aware of the promissory note at the time it was being entered into, nor was he aware that Liber may have believed there to be a partnership. Liber argues that there were actions that he relied upon, including the approval of the website design, submitting a W-9 to a court in the name of WLO, and sharing clients. However, we do not believe that these actions, in the context of this case, create a question of fact as to whether there was a partnership that Liber relied upon when entering the promissory note in light of the unambiguous language in the note itself.

{¶ 30} We further do not find that the cases cited by Liber lead to a different conclusion. In *Komorowski*, a legal malpractice case, the appellate court found there to be a question of fact as to whether a partnership could be implied between attorneys under R.C. 1776.38 based upon the fact that they both used the firm name Hildebrand & Hildebrand, including in advertisements, a website advertising the firm, and on their letterhead. Liber points to the similarity of using the family surname in the title of the

15.

firm, which the Westmeyers used in official documents and on a website, as well as using the same office space. The trial court distinguished the use of the family name, stating that "the use of two names in a law firm name itself would give one the impression that there are two owners with such names. But in this case, only one name is used. Neither 'Westmeyer Law' nor 'The Westmeyer Law Offices' itself implies more than one owner of the business." We agree with this analysis. Even more distinguishing, unlike in *Komorowski*, here the promissory note itself clears up any possible belief as to whether Westmeyer Jr. entered into the promissory note as a partner in a partnership.

{¶ 31} Liber also claims that *Holmes* requires us to reverse the trial court's decision, pointing to similarities between the facts in *Holmes* and the Westmeyers' situation. However, as with *Komorowski*, we find the fact that the promissory note makes clear that Westmeyer Law is a sole proprietorship, not a partnership, distinguishes the instant case from *Holmes*.

{¶ 32} For these reasons, we do not find a question of fact as to whether Westmeyer III and WLO can be liable under the promissory note. Liber's second assignment of error is found not well-taken.

16.

## Conclusion

{¶ 33} The judgment of the Lucas County Common Pleas Court is affirmed.

Pursuant to App.R. 24, Liber is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J. _____
                                    JUDGE
Myron C. Duhart, J.

                                _____
Charles E. Sulek, P.J.              JUDGE
CONCUR.

                                _____
                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.